# United States Court of Appeals

## For the First Circuit

No. 05-1171

JEAN ROUDY ELYSEE,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Lynch, and Howard,
Circuit Judges.

Harvey J. Bazile and Bazile & Associates on brief for petitioner.

Surell Brady, Attorney Advisor, Justice Management Division, United States Department of Justice, Peter D. Keisler, Assistant Attorney General, Civil Division, and Jeffrey J. Bernstein, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

February 21, 2006

**LYNCH**, **Circuit Judge**.  Petitioner Jean Roudy Elysee seeks review of a decision denying his application for cancellation of removal and ordering him removed to Haiti.  Because Elysee does not raise even a colorable legal question or constitutional claim, we do not have jurisdiction over his petition.

## I.

Elysee, a citizen of Haiti, was granted lawful permanent resident status in 1987, when he came to the United States.  He has four children.  Three are United States citizens, two of whom currently reside with him and one of whom lives with the mother in Somerville, Massachusetts; the fourth child lives in Haiti.  Elysee and the two children live with Elysee's father, a United States citizen, and his mother, a lawful permanent resident.  Elysee's brothers and sisters all live in the United States, although he has some extended family in Haiti.

In 1999, Elysee was arrested twice for two separate attacks on his former girlfriend, the first occurring on June 8, 1999 and the second occurring on July 13, 1999.  The first incident resulted in a civil restraining order being issued against him on June 9, 1999.  On September 28, 1999, Elysee pled guilty in Massachusetts state court to assault and battery, threatening to commit a crime, and intimidating a witness for the first incident, and assault with a dangerous weapon and violation of a restraining order for the second.

The former INS[1] issued a notice to appear on May 16, 2000, charging that, as a result of his state convictions, Elysee was removable under 8 U.S.C. § 1227(a)(2)(A)(ii) (conviction after admission of two or more crimes of moral turpitude not arising out of the same scheme of criminal misconduct) and § 1227(a)(2)(E)(ii) (certain violations of a protection order after admission).

At an initial hearing before the immigration judge (IJ) on November 8, 2000, Elysee conceded removability on both grounds charged, but sought discretionary relief in the form of cancellation of removal under 8 U.S.C. § 1229b.  He conceded that he did not have a fear of returning to Haiti based on any of the statutory grounds for asylum or withholding of removal; nor did he have a fear of torture supporting relief under the Convention Against Torture.  Further hearings were held on December 6, 2002 and November 28, 2003, during which Elysee testified and presented documentary evidence in support of his application for cancellation of removal.

At the conclusion of the hearing on November 28, 2003, the IJ denied Elysee cancellation of removal as a matter of discretion.  The IJ noted that an alien seeking cancellation of removal "bears the burden of demonstrating that discretionary

_____

[1] On March 1, 2003, the relevant functions of the INS were transferred to the Department of Homeland Security, and the INS subsequently ceased to exist.  See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471(a), 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291(a)).

relief should be exercised on his behalf." The IJ "balance[d] the adverse factors evidencing [Elysee's] undesirability as a permanent resident with the social and humane considerations presented on his behalf." The IJ noted Elysee's testimony that hardship would be suffered by him, his children, and his family if he were removed, but also noted that Elysee "ha[d] not provided detailed evidence for this Court to consider." The IJ also found that Elysee had not provided evidence that he was supporting his children; indeed, Elysee's testimony was that he did not earn significant wages and relied on his parents for financial support. The IJ also considered Elysee's generalized fears of return to Haiti, but found that Elysee "ha[d] not provided any evidence that his return to Haiti would present him a hardship other than the fact that his family is primarily in the United States."

With regard to Elysee's criminal history, the IJ found that Elysee was not a credible witness and that he had "failed to provide proof of genuine rehabilitation where his criminal record is such a serious one." The IJ noted that, at times, Elysee affirmed the accuracy of police reports filed in the two incidents; these reports stated that the victim had visible injuries and had said that Elysee had strangled her and kicked her in the head. The IJ noted that at other times Elysee denied touching or harming his former girlfriend as the police reports described. The IJ found that Elysee's criminal history was "very recent, very serious and

of such a nature that [Elysee] must [s]how unusual or outstanding equities."

The IJ concluded that "based upon all the evidence and all of the testimony, and balancing all of the positive matters presented to [the court] and all of the adverse matters presented to [the court]," Elysee did not "merit[] a favorable exercise of discretion." The IJ ordered Elysee's removal to Haiti. Elysee appealed to the Board of Immigration Appeals (BIA), which adopted and affirmed the IJ's decision on January 13, 2005, making the IJ's decision the final agency determination for the purposes of appellate review. See Long v. Gonzales, 422 F.3d 37, 40 (1st Cir. 2005).

Elysee petitions this court for review, arguing that the IJ's denial of his application for cancellation of removal was an abuse of discretion.

## II.

In general, under the cancellation of removal provision for lawful permanent residents, "[t]he Attorney General may cancel removal" of a deportable alien if certain conditions are met. 8 U.S.C. § 1229b(a). At minimum, (1) the alien must have been a lawful permanent resident for at least five years, (2) the alien must have continuously resided in the United States for seven years after admission, and (3) the alien must have not been convicted of any aggravated felony. Id. Even if these minimum conditions are

met, an alien may be ineligible for cancellation of removal under certain other circumstances. See, e.g., id. § 1229b(c)(1) (ineligible if entered the United States as a crewman after June 1, 1964); id. § 1229b(c)(4) (ineligible if deportable on national security grounds).

Elysee was not deemed statutorily ineligible for cancellation of removal, although the government did challenge the continuous residence requirement. Instead, the IJ determined that Elysee had not established that the hardship, if any, that would be suffered by Elysee and his family outweighed his serious criminal history and potential future dangerousness and the fact that he had not accepted responsibility for his crimes.

Cancellation of removal is a form of discretionary relief over which we generally have no appellate jurisdiction, although the recently enacted REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, 302, has "reframed the limits on jurisdiction to provide an exception." Mehilli v. Gonzales, 433 F.3d 86, 92 (1st Cir. 2005). Under 8 U.S.C. § 1252(a)(2)(B)(i), "except as provided in subparagraph (D) . . . no court shall have jurisdiction to review . . . any judgment regarding granting of relief" under the cancellation of removal provision. Subparagraph (D) was added by the REAL ID Act:

> [n]othing in subparagraph (B) or (C), or in
> any other provision of [the Immigration and
> Nationality Act] (other than this section)
> which limits or eliminates judicial review,

shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals.

REAL ID Act, § 106(a)(1)(A)(iii), 119 Stat. at 310 (codified at 8 U.S.C. § 1252(a)(2)(D)); see also Sena v. Gonzales, 428 F.3d 50, 52 (1st Cir. 2005) (per curiam) (citing this provision and concluding that the court had jurisdiction because constitutional and legal questions were presented). Although this provision allows possible review of discretionary determinations like cancellation of removal, a petition for review must raise at least a colorable constitutional claim or question of law before we will exercise jurisdiction to review such a claim or question. See Mehilli, 433 F.3d at 93-94.

Elysee does not raise even a colorable constitutional claim or question of law. Elysee's main arguments in his petition for review are (1) the IJ's supposed "complete[] disregard[]" for the hardships that will be faced by Elysee's children if he is deported, (2) the unfair weight given to the fact that Elysee's underlying convictions stemmed from incidents of domestic violence, and (3) the IJ's alleged error in concluding that Elysee was not credible in his testimony about the criminal proceedings and had not taken responsibility for his criminal conduct. These are not constitutional claims or questions of law but attacks on the factual findings made and the balancing of factors engaged in by the IJ.

Elysee also makes an offhand claim of gender bias, arguing that the fact that he is a male and a father (instead of a mother) played an improper role in the IJ's decision. This argument is frivolous. There is not a scintilla of evidence in the record suggesting that gender bias played any role in the IJ's decision. Furthermore, Elysee's argument on the point is woefully underdeveloped. To the extent that this could even be construed as a constitutional equal protection claim, it is not colorable. See id. at 93-94 (constitutional claims must be at least colorable to give court of appeals jurisdiction under 8 U.S.C. § 1252(a)(2)(D)).

The petition for review is dismissed for lack of jurisdiction.