# United States Court of Appeals
## For the First Circuit

No. 06-1849

ABU HASAN MAHMUD PARVEZ,

Petitioner,

v.

PETER D. KEISLER,[*] Acting Attorney General

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lipez, <u>Circuit Judge</u>
Tashima,[**] <u>Senior Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.

<u>William E. Graves Jr.</u> for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, <u>Nancy E. Friedman</u>, Office of Immigration Litigation Attorney, and <u>Richard M. Evans</u>, Office of Immigration Litigation Assistant Director, for respondent.

November 2, 2007

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Peter D. Keisler is substituted for former Attorney General Alberto R. Gonzales as respondent.

[**] Of the Ninth Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  The petitioner, Abu Hasan Mahmud Parvez, a native and citizen of Bangladesh, seeks review of a decision by the Board of Immigration Appeals ("BIA") denying his motion to reopen proceedings to enable him to renew his request for cancellation of removal and to apply for asylum and withholding of removal.  Parvez also claims that the BIA deprived him of his right to due process by failing to adjudicate his motion for a stay of voluntary departure.  We deny his petition for review.

**I.**

Parvez entered the United States in 1991 on a diplomatic visa, as an assistant to his uncle, a Bangladeshi diplomat.  Soon afterward, he applied for and was granted student status.  He attended college for one year, after which he remained in the United States despite the expiration of his visa.  In 1998, Parvez married a fellow Bangladeshi who was in the process of applying for permanent legal residence.  Together they had a son, who is a U.S. citizen.

In 2003, Parvez was placed in removal proceedings by the Department of Homeland Security ("DHS") after he voluntarily reported under a registration program applicable to Bangladeshi residents.[1]  Through counsel, Parvez conceded removability, but

_____

[1] Beginning in November 2002, the Attorney General instituted the National Security Entry-Exit Registration System (NSEERS) program, which required men from certain countries to report in person to the former Immigration and Naturalization Service (INS) to register their presence in the United States.  67 Fed. Reg.

sought cancellation of removal under § 240A(b) of the Immigration and Nationality Act on the ground that removal would constitute an extremely unusual hardship for his young son.[2]  In an oral ruling after a hearing, the Immigration Judge ("IJ") determined that Parvez's removal would not expose his son to exceptional and extremely unusual harm, denied his application for relief, and granted him voluntary departure.  The IJ based her decision in part on evidence that Parvez had family, including his politically influential uncle, in Bangladesh, and a finding that there was no evidence that Parvez's family members had suffered persecution.[3]

---

70526 (Nov. 22, 2002).  Initially, this list of countries did not include Bangladesh.  In January 2003, the Attorney General added Bangladesh to the NSEERS program.  As a result, men from Bangladesh who entered the United States during a certain time frame were required to register with the INS.  68 Fed. Reg. 2363 (Jan. 16, 2003).

[2] In considering what constitutes "exceptional and extremely undue hardship," the relevant inquiry here is the experience of Parvez's son should Parvez be removed rather than the experience of Parvez himself.  Section 240A(b), codified at 8 U.S.C. § 1229b(b), provides for cancellation of removal if the alien has been physically present in the United States for a continuous period of not less than ten years, has been a person of good moral character, has not been convicted of various statutory offenses, and "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

[3] The IJ found: "Certainly, Bangladesh is a violent country plagued by cyclones and floods, and politically motivated violence since the 2001 election, but the respondent has significant family ties in that country who do not appear to have ever suffered any deprivation from any of these conditions."

Parvez filed a timely notice of appeal with the BIA, which affirmed the IJ's decision and extended Parvez's period of voluntary departure to March 11, 2006. On March 9, 2006, Parvez filed a motion to reopen with the BIA on the grounds that he had new evidence regarding his uncle's death, the hardship his son would experience if Parvez were removed, changed country conditions in Bangladesh, and additional familial changes. On these grounds, he argued, he should be permitted to file with the IJ an application for asylum and withholding of removal, and his request for cancellation of removal should be reconsidered. Parvez also moved for a stay of voluntary departure.

The evidence Parvez asked the BIA to consider included proof that his uncle had passed away in December 2004, that his mother had been forcibly retired (on account of age), that his sister's family had left Bangladesh, that his son had become even more acclimated to life in the United States (including forgetting how to speak Bengali), and that conditions in Bangladesh had changed so as to make it dangerous for westernized, non-practicing Muslims such as Parvez and his family. On April 28, 2006, the BIA denied Parvez's motion to reopen, concluding that Parvez had produced no new information regarding his uncle's death or his son's circumstances. Moreover, the BIA found that Parvez had failed to demonstrate that he would likely suffer persecution if he were to return to Bangladesh.

This petition for review followed. In it, Parvez claims that the BIA abused its discretion by refusing to reopen proceedings to allow him to renew his request for cancellation of removal and to apply for asylum and withholding of removal. He further claims that the BIA erred by failing to address his motion to stay voluntary departure.

**II.**

We have consistently held that "[m]otions to reopen removal proceedings are disfavored as contrary to 'the compelling public interests in finality and the expeditious processing of proceedings.'" Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)(quoting Roberts v. Gonzales, 422 F.3d 33, 35 (1st Cir. 2005)). Accordingly, the denial of a motion to reopen is reviewed solely for abuse of discretion.[4] INS v. Doherty, 502 U.S. 314, 323 (1992) (holding that a denial of a motion to reopen is reviewed for abuse of discretion regardless of the underlying basis of the alien's request to reopen); Molina De Massenet v. Gonzales, 485 F.3d 661, 663 (1st Cir. 2007); Raza, 484 F.3d at 127. A decision will be upheld "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Raza, 484 F.3d at 127.

---

[4] We review the BIA's legal interpretations de novo, with appropriate deference to the BIA's interpretation of the underlying statute in accordance with the principles of administrative law. See Molina De Massenet v. Gonzales, 485 F.3d 661, 663 (1st Cir. 2007).

A motion to reopen the BIA's proceedings must be based upon (1) new material evidence that was not available and which an alien could not have presented at the prior hearing and (2) a showing of a "prima facie case for the underlying substantive relief sought." Olujoke v. Gonzales, 411 F.3d 16, 23 (1st Cir. 2005); see also 8 C.F.R. § 1003.2(c).

## A. Cancellation of Removal

When the BIA denies cancellation of removal based on the factual determination that an alien fails to demonstrate the requisite hardship, we lack jurisdiction to review its decision. 8 U.S.C. § 1252(a)(2)(B)(i)("[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section 1229b [cancellation of removal]."). See Cruz-Camey v. Gonzales, No. 06-2590, slip op. at 3, (1st Cir. Sept. 11, 2007); Elysee v. Gonzales, 437 F.3d 221, 223 (1st Cir. 2006). Therefore, we also lack jurisdiction to consider the BIA's denial of the motion to reopen for consideration of cancellation of removal when the BIA has decided there was not the requisite hardship. Kaweesa v. Gonzalez, 450 F.3d 62, 67 (1st Cir. 2006); Mehilli v. Gonzales, 433 F.3d 86, 92-93 (1st Cir. 2005).

We do, however, have jurisdiction to review constitutional claims or questions of law under 8 U.S.C. §

1252(a)(2)(D).[5]  Mehilli, 433 F. 3d at 93.  Parvez attempts to bring himself within this exception by asserting that the BIA made a legal error and violated his right to due process by failing to consider the supporting materials he provided pertaining to his motion to reopen for cancellation of removal.  This supporting material primarily related to the death of his uncle, changes in the circumstances of the other family members, and his son's continued social and educational development.

1. New Evidence Regarding His Uncle's Death

We have jurisdiction to review Parvez's claim that the BIA committed a legal error in determining that the death of Parvez's uncle did not constitute new material evidence within the meaning of 8 C.F.R. § 1003.2(c).[6]  Parvez argues that because his uncle died in December 2004, two months after the IJ issued her oral ruling, a finding that the evidence reporting his uncle's death was not new evidence was in contravention of the regulation.

This argument fails to recognize that Parvez had an opportunity to file a motion with the BIA prior to its ruling on

_____

[5] The section states that no provision "which limits or eliminates judicial review[] shall be construed as precluding review of constitutional claims or questions of law raised upon petition for review."

[6] 8 C.F.R. § 1003.2(c) states: "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."

-7-

his appeal, through which he could have presented the new evidence about his uncle's death to the IJ after a remand by the BIA.[7] However, Parvez did not submit evidence of his uncle's death to the BIA until after the BIA rendered its decision on his appeal. Therefore, the BIA was justified in its position that the death of Parvez's uncle cannot constitute "new evidence sufficient to merit reopening" because "the respondent has not explained why he did not file a motion to reopen on this basis during the pendency of his appeal."[8]

2. New Evidence Regarding Other Familial Changes

Parvez also argues that the BIA violated his due process rights because "[t]he BIA appeared not to have considered any of the supporting evidence filed with the motion," particularly evidence pertaining to his sister's departure from Bangladesh, his mother's forced retirement on account of age, and his son's success in school. However, the BIA's language adequately demonstrates that the BIA considered the proffered evidence on these other

_____

[7] BIA Practice Manual § 4.8(b) (2004)("The Board does not consider new evidence on appeal. If new evidence is submitted, that submission may be deemed a motion to remand proceedings to the Immigration Judge for consideration of that evidence and treated accordingly.").

[8] In determining that the death of Parvez's uncle was not material new evidence, the BIA stated:
    In this regard, we note that the respondent's uncle died in December 2004, which was more than 1 year prior to our decision on the respondent's appeal. The respondent has not explained why he did not file a motion to reopen on this basis during the pendency of his appeal.

familial changes and nonetheless decided against Parvez.  The BIA directly addressed his son's circumstances, noting that the son would not experience "exceptional and extremely unusual hardship" in part because he is "very young, and capable of adapting to life in Bangladesh."

Here, Parvez's claim is a disguised challenge to fact finding.  See Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007) (holding that constitutional claims raised under the § 1252(a)(2)(D) exception must be more than "a disguised challenge to factual findings"). Thus, we have no jurisdiction to review the BIA's denial of the motion to reopen the cancellation of removal on the ground that the BIA did not adequately consider evidence regarding his sister's, mother's, and son's changed circumstances.

## B.  Asylum Application

Parvez also argues that the BIA abused its discretion by refusing to reopen proceedings to allow him to apply for asylum. An alien in removal hearings may move at any time to apply for asylum or withholding of deportation if the alien is able to establish a prima facie entitlement to the substantive relief sought, 8 C.F.R. § 1003.2(c)(1), and there are changed circumstances arising in the country to which deportation has been ordered, id. § 1003.2(c)(3)(ii).

Parvez asserts that he has "demonstrated a prima facie case for asylum based upon his religious beliefs as a non-

practicing Muslim who may be considered a heretic, his status as a westernized Bangladeshi, and his political opinion as a relative of the prominent part of the opposition Awami League." The BIA took a different view. It noted that Bangladesh has been plagued by politically motivated violence since the 2001 elections, yet Parvez's sister and mother, whose religious and political positions seem to be similar to Parvez's, "do not appear to have ever suffered any deprivation from any of these conditions." Moreover, the country condition information Parvez provided was "very general in nature" and did not indicate that someone in a position similar to Parvez's would experience persecution. In the BIA's view, "respondent's broad allegations that he will suffer persecution upon his return to Bangladesh amount to mere speculation." Given this assessment of the deficiencies in Parvez's case for asylum, the BIA did not abuse its discretion in denying his motion to reopen proceedings for consideration of an asylum claim.

## C. Withholding of Removal

Our conclusion that the BIA supportably found that Parvez did not make a prima facie showing with respect to his asylum claim necessarily dooms his claim with respect to the withholding of removal. See Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005) (finding that the BIA's rejection of the petitioner's asylum claim, if sustainable, "sounds the death knell for his counterpart claim for withholding of removal"). Accordingly, we

-10-

conclude that the BIA did not abuse its discretion by denying the motion to reopen proceedings so as to allow Parvez to apply for such relief.

## D. Failure to Rule on Motion to Stay Voluntary Departure

Parvez claims that the BIA denied him due process by failing to rule on his motion to stay voluntary departure pending its decision on his motion to reopen proceedings. Even if Parvez could assert a due process claim based on the BIA's failure to rule on his motion to stay voluntary departure (an issue on which we take no position), such a claim would at least require a statutory or regulatory obligation to rule on the motion. Parvez has not established that the BIA had such an obligation.[9]

For the foregoing reasons, we <u>deny</u> the petition for review.

So ordered.

---

[9] The government asserts that Parvez should have sought an extension of his voluntary departure period from the Department of Homeland Security. <u>Naeem</u> v. <u>Gonzales</u>, 469 F.3d 33, 38 n.3 (1st Cir. 2006). Parvez filed his motion to stay voluntary departure with the BIA on March 9, 2006, two days prior to the expiration of his voluntary departure period. If the BIA had granted a stay pending its ruling on the motion to reopen, Parvez would have been required to depart on April 30,2007.