# United States Court of Appeals
## For the First Circuit

No. 09-1508

ANTHONY OLUWADAISI AYENI,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Selya, Lipez and Howard, <u>Circuit Judges</u>.

<u>Vard R. Johnson</u> on brief for petitioner.
<u>Tony West</u>, Assistant Attorney General, Civil Division, United States Department of Justice, <u>Shelley R. Goad</u>, Assistant Director, Office of Immigration Litigation, and <u>Tim Ramnitz</u>, Attorney, Office of Immigration Litigation, on brief for respondent.

August 17, 2010

**SELYA**, <u>**Circuit Judge**</u>.    The petitioner challenges a decision of the Board of Immigration Appeals (BIA) denying his application for cancellation of removal. We lack jurisdiction over much of his asseverational array, and what remains is without merit.  Accordingly, we reject the petition.

The facts are straightforward.  The petitioner, Anthony Oluwadaisi Ayeni, is a native and citizen of Nigeria.  He entered the United States on a six-month visitor's visa in August of 1987, and overstayed.   He has worked at a variety of occupations, including janitor, newspaper delivery person, taxi and limousine driver, and medical technician.  Along the way, he earned an associate's degree in engineering from a community college in Virginia.

In 1998, the petitioner, having been in the United States illegally for a decade, married a countrywoman similarly lacking legal status.  The couple and their four American-born children reside in Cranston, Rhode Island.

The eldest child, a son born in 1993, suffers from severe asthma and migraine headaches.  The second child, a son born in 1996, is afflicted with attention deficit hyperactivity disorder, for which he takes prescription medication.  The third child, a daughter born in 2000, is healthy.  Her younger sister, born in 2002, has manifested developmental deficits affecting her speech and language skills.

-2-

On April 23, 2003, the Department of Homeland Security commenced removal proceedings against the petitioner. In a hearing before an immigration judge (IJ), the petitioner conceded removability and cross-applied for cancellation of removal. See 8 U.S.C. § 1229b(b)(1). In support, he asserted that he is the sole source of income for his family and that, therefore, his wife and children would be forced to accompany him if he were deported. This would visit upon them a litany of hardships, described in his testimony.

On December 6, 2004, the IJ rejected the petitioner's claim and pretermitted his application for cancellation of removal. She predicated this decision on a finding that the petitioner did not satisfy the good moral character requirement, id. § 1229b(b)(1)(B), because he had made a false claim to United States citizenship on an employment eligibility form.

The petitioner appealed to the BIA. Concluding that the petitioner's untruthful assertion of citizenship did not as a matter of law preclude a finding of good moral character, the BIA vacated the IJ's decision and remanded for further proceedings.

A newly assigned IJ reconsidered the petitioner's application for cancellation of removal and, on January 24, 2008, denied it. This time, the IJ held that the petitioner had failed to establish that his American-born children would suffer

-3-

"exceptional and extremely unusual hardship" were he sent back to Nigeria.  Id. § 1229b(b)(1)(D).

The petitioner again appealed to the BIA.  On March 26, 2009, the BIA upheld the IJ's decision, explaining that the petitioner had not carried his burden of proving that exceptional and extremely unusual hardship would be visited upon his children if he was removed to Nigeria.  This timely petition for judicial review followed.  In it, the petitioner asseverates that the BIA committed material errors of law.

We begin our analysis with the basics.  Cancellation of removal is a form of discretionary relief, the granting of which allows a non-resident alien, otherwise removable, to remain in the United States.  It is available only if an alien can establish (i) that he has been physically present in the United States for a continuous period of not less than ten years immediately preceding the date of his application; (ii) that he has been a person of good moral character over that span; (iii) that he has not been convicted of certain enumerated crimes; and (iv) that his removal would result in exceptional and extremely unusual hardship to his American-citizen spouse, parent, or child.  Id. § 1229b(b)(1); see Toribio-Chavez v. Holder, ___ F.3d ___, ___ (1st Cir. 2010) [2010 WL 2680784, at *5].  The first three requirements are not in issue here.  Consequently, we focus the lens of our inquiry on the fourth element: whether the petitioner has established that his citizen

children are likely to suffer exceptional and extremely unusual hardship should he be removed to his homeland.

This focus is narrowly confined. As a general proposition, the courts of appeals lack jurisdiction to review agency-level hardship determinations made in the cancellation of removal context. 8 U.S.C. § 1252(a)(2)(B) (stating that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief" under the cancellation of removal provision); see Parvez v. Keisler, 506 F.3d 93, 96 (1st Cir. 2007); Elysee v. Gonzales, 437 F.3d 221, 223 (1st Cir. 2006).

Congress did, however, carve out an isthmian exception to the sweep of this jurisdiction-stripping provision. Under the exception, appellate jurisdiction exists when a petition for judicial review raises claims premised on either constitutional questions or questions of law. 8 U.S.C. § 1252(a)(2)(D). It follows that we have jurisdiction in the instant case only if and to the extent that the petition fits within this exception.

Reaching this safe harbor is not an exercise in semantics. The presence vel non of either a constitutional or legal question is a matter of substance, not a function of labeling. A bare allegation of either a constitutional shortfall or legal error will not transmogrify an unreviewable issue of fact into an issue reviewable by the courts. Xiao Ji Chen v. U.S. DOJ, 471 F.3d 315, 331 (2d Cir. 2006). For jurisdiction to attach, the claim of

-5-

constitutional or legal error must at least be colorable. Elysee, 437 F.3d at 223.

In an effort to access the safe harbor and avoid the jurisdictional bar, the petitioner frames his plaints in the idiom of constitutional or legal error. He advances four arguments, two of which substantially overlap. Consequently, we divide our assessment into three segments.

The petitioner first contends that the BIA committed an error of law by applying an incorrect legal standard. The petitioner starts this argument by explaining that the cancellation of removal statute required him to establish that his removal would result in exceptional and extremely unusual hardship to qualifying family members (here, his American-born children). See 8 U.S.C. § 1229b(b)(1)(D). Building on this foundation, he insists that the BIA added a further requirement, unanchored in the statutory text: proof that he, as the applying alien, would be entirely foreclosed from obtaining employment in his homeland. Relatedly, the petitioner argues that, in adding this neoteric requirement, the BIA departed without explanation from its own precedents and, thus, abridged his right to due process.

The petitioner's argument that the BIA imposed a new and unprecedented requirement for entitlement to cancellation of removal is within our jurisdiction. After all, the choice and shape of an applicable legal standard is quintessentially a question of law.

See, e.g., Khan v. Gonzales, 495 F.3d 31, 35 (2d Cir. 2007); Vinick v. United States, 205 F.3d 1, 7 (1st Cir. 2000); United States v. Mariano, 983 F.2d 1150, 1154 (1st Cir. 1993). Thus, we have jurisdiction to hear and determine the petitioner's claim that the BIA applied an incorrect legal standard in his case. See Lumataw v. Holder, 582 F.3d 78, 85 (1st Cir. 2009).

This proves to be a Pyrrhic victory for the petitioner. We review the merits of the claim de novo, though according a modicum of deference to the BIA's interpretation of the relevant statute. Mendez-Barrera v. Holder, 602 F.3d 21, 24 (1st Cir. 2010). This review shows conclusively that there was no error of law. We explain briefly.

The statement that the petitioner views as the smoking gun reads as follows: "[T]he record does not establish that the [petitioner] is entirely foreclosed from obtaining employment in Nigeria and thus providing his children with the necessities of life." In characterizing this statement as the herald of a new standard, the petitioner takes one line of text from the BIA's decision and attributes disproportionate weight to it. This approach glosses over the context in which the statement was made and conveniently overlooks that it is a tiny fraction of the BIA's evaluation of the evidence bearing on whether the petitioner established exceptional and extremely unusual hardship.

Reading the BIA's decision as a whole puts the challenged statement in perspective. Far from blazing a new trail, the BIA faithfully applied the congressionally mandated hardship standard. It did not, as the petitioner charges, create a new requirement that an alien prove that he would be altogether unemployable in his homeland. To the contrary, the BIA appears to have made the challenged statement as a comment on the petitioner's testimony that he would be unable to find work in Nigeria. The BIA was merely pointing out that, despite the petitioner's assertion that he would be unable to obtain employment and support his family if deported, he had failed to proffer any evidence to substantiate that assertion.

In the last analysis, the petitioner's argument confuses the issue of the elements of the standard with the much different issue of what weight should be accorded to facts that bear upon the implementation of the standard. The petitioner's potential employability in Nigeria and its effect on his ability to provide for his children are not elements of the standard used by the BIA but, rather, are facts (among others) that inform the BIA's discretionary determination of whether the petitioner has satisfied the standard.

The petitioner's related claim of constitutional error — a putative due process violation — is equally unavailing. The BIA hewed closely to past precedent in taking into account opportunities

for employment and ability to provide for qualifying family members in evaluating an application for cancellation of removal. See, e.g., In re Gonzalez Recinas, 23 I. & N. Dec. 467, 471 (BIA 2002); In re Monreal-Aguinaga, 23 I. & N. Dec. 56, 64 (BIA 2001). Because the petitioner had fair warning of the standard that was used, his due process rights were not compromised. See Mendez-Barrera, 602 F.3d at 26 (finding no violation of due process because criteria used in evaluating claim eschewed earlier case law); Medina-Morales v. Ashcroft, 371 F.3d 520, 529 (9th Cir. 2004) (similar).

The petitioner's second argument centers on the BIA's reference to his "three" children. Noting that he has four children, not three, the petitioner asserts that this miscounting constitutes a misstatement of a material fact that is functionally equivalent to an error of law.

Even if we assume, for argument's sake, that a mistake of fact can be so profound as to constitute an error of law, the petitioner's argument comprises little more than idle buzznacking. Although the BIA's decision at one point alludes to the petitioner's "three" children, a later statement in the decision makes it clear that the BIA knew perfectly well that the petitioner had a fourth child. It wrote that the petitioner's "two sons take medication . . . [and] [h]is youngest daughter has speech and language delays" (emphasis supplied).

In all events, the alleged miscounting was of no moment. The omitted child — the petitioner's older daughter — had no special needs, and her existence did not bear heavily on the hardship equation. A single mistaken statement about a subsidiary fact would not by any stretch of even the most fertile imagination constitute an error of law. See Khan, 495 F.3d at 36 (holding that petitioner's claim "does not present a question of law, because it merely quibbles with the IJ's description of the facts"). An agency does not commit an "error of law" each and every time a piece of evidence is described with less than perfect accuracy. Mendez v. Holder, 566 F.3d 316, 323 (2d Cir. 2009) (per curiam). We lack jurisdiction to adjudicate this claim.

The petitioner's final argument is that the BIA neglected adequately to weigh the seriousness of his eldest child's asthma. This failure, he says, constitutes an error of law. Contrary to the petitioner's importunings, this claim does not raise a reviewable issue.

Stripped of rhetorical flourishes, the claim comprises nothing more than a challenge to the correctness of the BIA's factfinding. It is the BIA's prerogative to evaluate the evidence of hardship, and Congress has stripped the courts of authority to second-guess such an evaluation. The petitioner's claim that the BIA failed to accord sufficient weight to the seriousness of his son's asthma is a factual claim. Cloaking it in the garb of legal

error does not alter its nature. See Rashad v. Mukasey, 554 F.3d 1, 5 (1st Cir. 2009) (holding allegation that the agency failed fully to evaluate an aspect of petitioner's claim to be another way of saying that the agency got the facts wrong); Liu v. INS, 508 F.3d 716, 721 (2d Cir. 2007) (per curiam) (concluding that a similar claim amounted to a quarrel with the agency's factfinding); see also Elysee, 437 F.3d at 223-24.

The petitioner attempts to blunt the force of this reasoning by invoking the Second Circuit's decision in Mendez. There, the court held that it had jurisdiction to review an application for cancellation of removal when the IJ "totally overlooked" evidence of health-related conditions. 566 F.3d at 323.

In this respect, the case at hand is readily distinguishable from Mendez. Assuming, without deciding, that a total failure to consider relevant evidence can amount to an error of law, there was no such total failure here. Both the BIA and the second IJ addressed the seriousness of the oldest child's asthma. For example, the BIA noted that the petitioner's son requires "regular[]" medication for his asthma, and pondered the medical care available in Nigeria. Similarly, the second IJ acknowledged that the eldest son takes medication for his asthma, and characterized his condition as "chronic."

These excerpts adequately reveal that the evidence in question was considered, not overlooked. See Parvez, 506 F.3d at

-11-

97; see also Sulaiman v. Gonzales, 429 F.3d 347, 351 (1st Cir. 2005). The petitioner's disagreement with the weight that the agency attached to his son's asthma is not a sufficient hook on which appellate jurisdiction may be hung.

We need go no further. The petitioner's claim that the BIA applied an incorrect legal standard fails on the merits. His remaining claims pose questions of fact, not law, and are thus beyond our purview.

**The petition for review is dismissed in part for want of jurisdiction and denied in part**. **It is so ordered**.