# United States Court of Appeals
## For the First Circuit

No. 10-1656

MOHAMMED SUZAUL HASAN, TANJILA HASAN, and TAMEEM HASAN,

Petitioners,

v.

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Boudin, and Lipez,
<u>Circuit Judges</u>.

<u>Salim Sheikh</u>, on brief for petitioners.
<u>Julia J. Tyler</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, <u>Tony West</u>, Assistant Attorney General, Civil Division, and <u>Shelley R. Goad</u>, Assistant Director, on brief for respondent.

March 12, 2012

**TORRUELLA**, **Circuit Judge**.  The petitioners in this case, natives and citizens of Bangladesh, seek review of a final order of removal issued by the Board of Immigration Appeals ("BIA").  See 8 U.S.C. § 1252(a)(1).  The BIA affirmed the denial by an immigration judge ("IJ") of the petitioners' applications for cancellation of removal, asylum, withholding of removal, and relief pursuant to the Convention Against Torture ("CAT").  After careful consideration, we dismiss the petition for review regarding cancellation of removal for lack of jurisdiction.  The remainder of the petition is denied, as we find that the BIA's decision was supported by substantial evidence.

## I.  Background

### A.  Facts and Procedural History

Mohammed Suzaul Hasan ("Hasan"), the lead petitioner in this case, entered the United States, on or about August 4, 1992, with his wife, Tanjila, and son, Tameem.  The three were admitted to this country as non-immigrant visitors with authorization to remain in the United States until February 3, 1993.  Hasan and his family overstayed their visas.  In the interim, a daughter, Tashfia, was born to the family on July 2, 1993 in Los Angeles, California.[1]  Ten days later, on July 12, 1993, Hasan filed an application seeking asylum and withholding of removal under

---

[1]  Having been born in the United States, Tashfia is a U.S. citizen.  See Mariko v. Holder, 632 F.3d 1, 8 n.4 (1st Cir. 2011) (citing United States v. Wong Kim Ark, 169 U.S. 649, 702 (1898)).

sections 208 and 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158 & 1231(b)(3), as well as protection under the CAT, as implemented by 8 C.F.R. §§ 1208.16-18, listing his wife and son as derivatives.

Over a decade later, on May 25, 2007, the government filed Notices to Appear ("NTA") in immigration court, charging Hasan, Tanjila, and Tameem (collectively, "Petitioners") with removability pursuant to section 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B). The three were placed in removal proceedings and, in pleadings submitted to the IJ on June 17, 2007, they admitted the factual allegations in the NTA, conceding their removability as charged.

On June 30, 2008, Petitioners filed individual applications seeking cancellation of removal under section 240A(b)(1) of the INA, 8 U.S.C. § 1229b(b)(1). Hearings on the merits of Hasan's pending application for asylum, withholding of removal, and CAT protection, as well as Hasan and Tanjila's applications for cancellation of removal,[2] were held by an IJ on October 15 and November 21, 2008. Hasan testified as to the events giving rise to his request for relief and protection, and the

---

[2]  Although Tameem filed his own application for cancellation of removal, he admittedly had no qualifying relative and thus could not pursue this avenue of relief. See 8 U.S.C. § 1229b(b)(1)(D) (qualifying relatives limited to the alien's spouse, parent, or child). However, Tameem continued to qualify for cancellation of removal as a derivative under his father's asylum application because he was under the age of twenty-one when it was filed. See 8 U.S.C. § 1158(b)(3)(B).

alleged exceptional and extremely unusual hardship that would befall his daughter, Tashfia, a U.S. citizen, if he and the rest of his family were removed to Bangladesh. Tashfia also testified in support of her parents' application for cancellation of removal.

Hasan declared that he came to the United States because of political persecution in Bangladesh by opposition parties. Hasan began his political career in 1985 with the Youth Front of the Jatiya Party,[3] and was eventually elected to prominent positions within the local party chapter. Prior to his departure from Bangladesh in 1992, Hasan had been attacked and threatened on numerous occasions by political opponents of the Jatiya Party, including the Bangladesh National Party ("BNP"), the Awami League, and a fundamentalist Islamic group called the Jamaat-e-Islami. Specifically, Hasan described: (1) being beaten by members of the Awami League on October 7, 1988 while on his way back from a political meeting, for which he received medical treatment and several stitches on his face; (2) being attacked on March 2, 1989 by BNP members who attempted to abduct him from a marketplace and fired upon him as he fled on a motorcycle; (3) being robbed and beaten severely by BNP members on August 25, 1989 while he was collecting donations for the Jatiya Party at a marketplace; (4) receiving death threats from a BNP leader on October 26, 1989

---

[3] While Hasan referred to the "Jatio" Party in his 1993 asylum application, both the IJ and the BIA used the term "Jatiya" in their decisions, as that party is named in the U.S. State Department Country Reports. We do the same here.

-4-

for his work with the Jatiya Party; (5) being beaten with a hockey stick and assaulted with a knife by Islamic fundamentalists of the Jamaat-e-Islami on August 30, 1990 as he was leaving a rally; (6) being beaten in front of his home on December 6, 1990 by members of the BNP and Awami League after the Jatiya Party stepped down from power, from which attack he was saved by his wife's successful entreaty to the mob; and (7) being arrested and detained for three days in February of 1992 without an explanation or formal charges, after the BNP came into power, during which time he was beaten and given inedible food. Hasan declared that he was released from the last of these events only after his wife pleaded with the police and offered them a cash bribe.

Hasan was once again attacked and attempts were made against his life in April of 1992. Consequently, he left Bangladesh with his wife and son on July 30, 1992, and made for Belgium, from which country the family found its way to the United States on a valid, non-immigration visa.

Hasan testified that, at the time of his hearing, Bangladesh had a "caretaker government," that all political activities were "suspended" and restricted, and that the Jatiya Party was "not in power at all." The government, in contrast, presented the U.S. State Department's 2007 Country Report on Human Rights Practices for Bangladesh, which indicated that after the 2001 elections, which were supervised by a nonparty caretaker government, the BNP had formed a four-party coalition government

-5-

with the Jamaat-e-Islami, the Bangladesh Jatiya Party, and the Islami Oikko Jote. The 2007 Country Report also recounted the implementation of electoral and political reforms. In addition, the government pointed to newspaper articles chronicling a historic democratic election held on December 29, 2008, as well as statements in the 2008 Country Report on Human Rights Practices for Bangladesh that the elections were "considered by international and domestic observers as free and fair," blemished only by "isolated irregularities" and "sporadic violence." Asked specifically what harm might befall him if he returned to Bangladesh, Hasan stated that he did not "know what will happen." He identified the BNP and Jamaat-e-Islami as "the main threat" for him and averred that members of these organizations would not like it "if [he] g[o]t into politics again."

As to Tashfia, Hasan's daughter and a U.S. citizen, declarations by herself and Petitioners reflected that she had never traveled to Bangladesh, knew little about the country, and is not comfortable speaking the native language, nor can she read or write in Bengali. If the Petitioners were repatriated to Bangladesh, Tashfia would accompany them as there is no one in the United States that could care for her. Hasan expressed fears that political rivals might kidnap Tashfia in order to hurt him, or that she might be kidnaped simply for being perceived as a foreigner from a rich country. Hasan also worried that food shortages,

-6-

substandard health care, and the expense of education for English speakers in Bangladesh might affect Tashfia negatively.

**B. The IJ's Decision**

On June 17, 2009, the IJ issued a written decision denying Hasan's request for asylum, withholding of removal, and CAT protection, denying Hasan and Tanjila's request for cancellation of removal, but granting Petitioners voluntary departure.

The IJ determined that Petitioners were ineligible for cancellation of removal because they failed to demonstrate that their removal would result in "exceptional and extremely unusual hardship," 8 U.S.C. § 1229b(b)(1)(D), to their one qualifying relative, Tashfia, that would be "substantially different from, or beyond, that which would normally be expected" from repatriation, Matter of Monreal, 23 I. & N. Dec. 56, 62 (B.I.A. 2001) (citing H.R. Conf. Rep. No. 104-828 discussing intended reach of INA section 240A(b)(1)(D)).  The IJ held that Petitioners could not establish that removal would cause Tashfia to be submitted to the necessary level of economic hardship since the record reflected that Hasan did not allege any adverse medical conditions; possessed a high degree of education as a CPA and college graduate; and was the co-owner of his family's house in Bangladesh.  The IJ also considered Petitioners' strong family ties in Bangladesh, including Hasan's brothers, sisters, and father who all currently reside there, and the fact that a number of these relatives held skilled

-7-

positions.[4]  There was also meager evidence indicating that Tashfia would face peril based on any political activities in which her father may have engaged over seventeen years ago, or that her U.S. citizenship would make her an appreciable target for kidnapping or other criminal activity.

Regarding Petitioners' eligibility for asylum under the INA's section 208, 8 U.S.C. § 1158, the IJ determined that, assuming Petitioners had sustained their burden of establishing past persecution, the government had nevertheless established by a preponderance of the evidence that there had been a fundamental change in circumstances in Bangladesh such that Petitioners no longer had a well-founded fear of persecution on account of a statutorily cognizable ground.  See id. § 1158(b)(1)(A) (in order to establish eligibility for asylum under INA section 208, an alien must be a refugee within the meaning of INA section 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A)); id. § 1101(a)(42)(A) (defining "refugee" as any person who is unwilling or unable to return to his or her country of nationality due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion"); see also Zarouite v. Gonzales, 424 F.3d 60, 63 (1st Cir. 2005)

---

[4]  The record reflects that Hasan has three brothers and three sisters who live and work in Bangladesh.  Hasan testified that, of his sisters, two were schoolteachers and one was a nurse; of his brothers, one was an attorney.  He also testified that his father was retired but owned land that he employed for sharecropping.

(well-founded fear can be shown on the basis of "past persecution, which gives rise to a presumption of future persecution . . . sufficient for the applicant's case unless rebutted by the Attorney General (e.g., by showing changed conditions)" (citing 8 C.F.R. § 208.13(b)(1)(i)(A))).

Specifically, the IJ noted that while Hasan had described harassment, abuse, and physical harm at the hands of members of various opposition political factions, every one of the cited incidents took place between 1988 and 1992. The IJ found that, since that time, the record revealed substantial changes in the relationship between the different Bangladeshi political factions and in the national political environment generally, as well as electoral reforms that had produced more open, free, and transparent voting processes in Bangladesh. Those changes served to rebut the presumption that Petitioners possessed a well-founded fear of persecution in Bangladesh, should they be removed to the country almost seventeen years after their departure. The IJ made note of the fact that the bulk of the Petitioners' documentary submissions antedated the evidence submitted by the government.

The IJ also found that none of the Petitioners had marshaled sufficient evidence to establish that, almost seventeen years later, they held an independent, well-founded fear of future persecution in Bangladesh, at least not one that the IJ considered objectively reasonable. See Sugiarto v. Holder, 586 F.3d 90, 94 (1st Cir. 2009) (explaining that even if an applicant cannot

establish past persecution, "[he or] she can [] establish eligibility for asylum based on a 'well-founded fear of future persecution' based on a protected ground" (citing 8 C.F.R. § 1208.13(b)(2))); see also id. (an applicant must establish that "[the] fear is both (1) subjectively genuine and (2) objectively reasonable, meaning that a reasonable person in the applicant's circumstances would fear persecution"). The IJ determined that the fact that Hasan had not been politically active in Bangladesh, whether for the Jatiya Party or any other entity, for over seventeen years, significantly undercut the reasonableness of his claimed fear. See Hasan v. Gonzales, 236 F. App'x 696, 697 (2d Cir. 2007) (citing with approval IJ's finding that petitioner's absence for ten years from relevant political activity suggests he would not face persecution in Bangladesh). In addition, the IJ noted that Petitioners have many family members who presently work and live safely and peacefully in Bangladesh, a fact that worked against their argument that Bangladesh would be unsafe for them or their family upon repatriation. See Ali v. Gonzales, 190 F. App'x 13, 16 (1st Cir. 2006) (denying review of denial of asylum claim, noting fact that petitioner's parents, brother, and uncle currently reside safely in Bangladesh negates claim of a well-founded fear).

Finally, the IJ denied Petitioners' claim for withholding of removal because they had failed to sustain their eligibility for asylum relief, and thus failed to meet the heightened standard for withholding of removal pursuant to INA's section 241(b)(3),

-10-

8 U.S.C. § 1231(b)(3).  See Rodríquez-Ramírez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005) ("[A] claim for withholding of removal places a more stringent burden of proof on an alien than does a counterpart claim for asylum.").  Similarly, their claim for relief under the CAT failed because the IJ found that Petitioners presented "little, if any," evidence indicating that it was more likely than not that they would suffer torture at the hands of the government, or with the consent or acquiescence of the government, should they be repatriated to Bangladesh.  See Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004) (relating this as the standard for relief under the CAT).

Petitioners appealed the IJ's decision to the BIA on July 13, 2009.  The IJ's decision was affirmed and the appeal dismissed on April 27, 2010.[5]  This timely petition for judicial review followed.

## II.  Discussion

Petitioners contend that the BIA applied an improper legal standard in reviewing the IJ's hardship determination regarding cancellation of removal and thus violated their due

---

[5]  We note that, despite having denied Petitioner's appeal, the BIA remanded the case to the IJ mandating that a new period of voluntary departure be provided that communicated the proper advisals including, but not limited to, the consequences of failing to timely post a voluntary departure bond.  On July 12, 2010, the government moved to dismiss the petition for review for lack of jurisdiction because no final order had yet been entered in light of the BIA's remand.  This Court denied the motion on August 13, 2010.

process rights.  They also contend that the BIA erred in affirming the IJ's determination regarding Petitioners' claims for asylum relief, withholding of removal, and protection under the CAT.  We address their arguments in turn.

## A.  Cancellation of Removal

"Cancellation of removal is a form of discretionary relief, the granting of which allows a non-resident alien, otherwise removable, to remain in the United States."  Ayeni v. Holder, 617 F.3d 67, 70 (1st Cir. 2010).  The Attorney General may cancel removal of an alien if he or she (1) has resided in the United States for a continuous period of not less than ten years; (2) has been a person of good moral character during that period; (3) has not been convicted of certain enumerated crimes; and (4) has established that removal would result in exceptional and extremely unusual hardship to a qualifying family member (i.e., U.S.-citizen spouse, parent, or child).  8 U.S.C. § 1229b(b)(1).  It is the last of these requirements that is at issue here.

Generally, no court has jurisdiction to review agency-level hardship determinations made in the cancellation of removal context.  Id. § 1252(a)(2)(B) (stating that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief" under the cancellation of removal provision); see Parvez v. Keisler, 506 F.3d 93, 96 (1st Cir. 2007) ("When the BIA denies cancellation of removal based on the factual determination that an

alien fails to demonstrate the requisite hardship, we lack jurisdiction to review its decision."). The one exception to this jurisdiction-stripping provision is that an appropriate court of appeals may review petitions that raise claims premised on either constitutional questions or questions of law. 8 U.S.C. § 1252(a)(2)(D) (establishing that no provision "which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon petition for review"). However, "[u]nder the terms of this limited jurisdictional grant, discretionary or factual determinations continue to fall outside the jurisdiction of the courts of appeals." Mehilli v. Gonzales, 433 F.3d 86, 93 (1st Cir. 2005) (internal quotation marks and citation omitted). Thus, only if the petition fits within the exception do we have jurisdiction, and "[t]he presence vel non of either a constitutional or legal question is a matter of substance, not a function of labeling." Ayeni, 617 F.3d at 70-71.

Petitioners attempt to bring themselves within this exception by asserting that the BIA's affirmance of the IJ's decision regarding extreme and unusual hardship violated their Fifth Amendment Due Process rights. Specifically, they argue the BIA did not adequately address as a hardship factor the potential harm that could befall Tashfia if she had to travel to Bangladesh. In support of this, Petitioners contend that the IJ's decision primarily mentioned facts relating to economic hardship, while the

-13-

BIA made only "cursory" mention of Petitioners' fear for Tashfia's safety. This, they contend, amounts to the application of an incorrect legal standard and a violation of their due process rights.

As the government correctly argues in opposition, this claim comprises nothing more than a challenge to the correctness of the BIA's factfinding. The very heart of Petitioners' claim, that the BIA's analysis regarding their fears for their daughter's safety was not "detailed" and failed to "adequately" address the issue, is fundamentally an objection to a factual determination by the BIA and the relative evidentiary weight the agency gave to competing considerations. In fact, the BIA directly addressed Petitioners' fears for Tashfia's safety and found that the IJ had "properly considered the relevant factors in the aggregate," including consideration of Petitioners' "testimony that they believed their daughter might be kidnapped in Bangladesh, as one of the potential hardship factors."

We have repeatedly held that "[c]loaking [a factual claim] in the garb of legal error does not alter its nature." Id. at 73 (holding petitioner's claim was factual in nature, where he alleged the BIA had failed to accord sufficient weight to the seriousness of his son's asthma); see also Rashad v. Mukasey, 554 F.3d 1, 5 (1st Cir. 2009) (holding allegation that the agency failed to fully evaluate an aspect of petitioner's claim to be "another way of saying that the agency got the facts wrong");

-14-

Parvez, 506 F.3d at 97 (allegation that the BIA failed to consider supporting evidence regarding familial changes in Bangladesh held to be factual in nature). Petitioner's claim is simply "a disguised challenge to fact finding," id., with no legal or constitutional grounding. As such, it cannot support this Court's exercise of jurisdiction to review the BIA's denial of Petitioners' appeal regarding their failed application for cancellation of removal.

## B. Denial of Asylum and Withholding of Removal

We give deferential review to the BIA's findings of fact and credibility under the "substantial evidence" standard. Bonilla v. Mukasey, 539 F.3d 72, 76 (1st Cir. 2008). Under this approach, "Board determinations of statutory eligibility for relief from deportation, whether via asylum or withholding of removal, are conclusive if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Guzmán v. I.N.S., 327 F.3d 11, 15 (1st Cir. 2003) (quoting I.N.S. v. Elías-Zacarías, 502 U.S. 478, 481 (1992)). This means that "we will not reverse unless 'the record evidence would compel a reasonable factfinder to make a contrary determination.'" Id. (quoting Aguilar-Solís v. I.N.S., 168 F.3d 565, 569 (1st Cir. 1999)). Ordinarily, "[w]e review the decision of the BIA and not that of the IJ, but to the extent that the BIA deferred to or adopted the IJ's reasoning, we review those portions of the IJ's decision as part of the final

decision of the BIA." Bonilla, 539 F.3d at 76 (internal quotation marks and citations omitted).

As noted previously, "[t]o establish eligibility for asylum, an alien must prove either past persecution, which gives rise to an inference of future persecution, or establish a well founded fear of future persecution on account of [his or] her race, religion, nationality, membership in a social group, or political opinion." Sugiarto, 586 F.3d at 94 (internal quotation marks and citation omitted) (citing 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(b)). "If an applicant can prove past persecution, a regulatory presumption that the applicant has a well-founded fear of future persecution is triggered." Guzmán, 327 F.3d at 15 (citing 8 C.F.R. § 208.13(b)(1)).

The BIA in this case determined that the IJ had correctly denied asylum based on a finding that, even assuming Hasan had suffered past persecution, the government successfully rebutted the presumption of a well-founded fear of future persecution. The BIA pointed to particular facts on the record that supported the IJ's conclusion. It also held that the IJ had properly found no well-founded fear of future persecution where Hasan conceded having been away from Bangladesh and the Jatiya Party for seventeen years and that the rest of his family remained in Bangladesh, unharmed.[6]

---

[6] The BIA also noted that, to the extent Petitioners feared kidnapping and extortion purely on account of their being viewed as wealthy persons, "such does not establish the required nexus to a ground protected under the [INA]." This conclusion was not

Petitioners challenge the BIA's determination by merely arguing that the agency's decision to affirm the IJ "was not supported by substantial evidence." Petitioners provide no argumentation to support this assertion, however, and our own review of the administrative record leads us to conclude otherwise. The IJ had before him reports and news articles substantiating the government's claim of changed country conditions, including country reports prepared by the U.S. State Department. See Banturino v. Holder, 576 F.3d 10, 15 (1st Cir. 2009) ("The [BIA] is entitled to rely on the State Department's country reports as proof of country conditions and may give them considerable weight, as long as any evidence adduced to contradict them is considered."). The IJ also took into account all of the testimonial and documentary evidence presented by Petitioners in support of their independent claim of fear of future persecution, and found it unpersuasive. As previously stated, ours is a deferential review and "we must uphold the BIA's determination unless the record points unerringly in the opposite direction." Sugiarto, 586 F.3d at 94 (internal quotation marks and citation omitted); see Banturino, 576 F.3d at 15 ("Where

directly challenged on appeal, and we find support for the same in our case law. See, e.g., Díaz v. Holder, No. 11-1125, 2012 WL 372664, at *2 (1st Cir. Feb. 7, 2012) (noting cases where "we have [] rejected attempts to recognize a particular social group comprised of individuals perceived to be wealthy, who are returning to Guatemala after living in the United States," where "nothing indicates that in Guatemala individuals perceived to be wealthy are persecuted because they belong to a social class or group" (quoting Sicaju-Díaz v. Holder, 663 F.3d 1, 4 (1st Cir. 2011))).

the agency's interpretation of the evidence as a whole is reasonable, we do not disturb it."). The IJ in this case had before it ample evidence from which to draw its conclusions, and we will not disturb the BIA's decision on such bare assertions of factual error.[7]

This conclusion also disposes of Petitioners' withholding of removal claim. As noted earlier, "[w]ithholding of removal, which provides mandatory relief, imposes a higher standard than asylum." Romilus, 385 F.3d at 8. "While eligibility for asylum requires a well-founded fear of future persecution, withholding of removal requires that the alien show a clear probability of future persecution." Chreng v. Gonzales, 471 F.3d 14, 23 (1st Cir. 2006). Therefore, because Petitioners' claim for asylum fails, so too does their counterpart claim for withholding of removal.

---

[7] Petitioners additionally argue that in some cases involving past persecution, even if there is little likelihood of future persecution, asylum may be granted as a matter of discretion for humanitarian reasons if the alien has suffered an atrocious form of persecution. See Matter of Chen, 20 I. & N. Dec. 16 (B.I.A. 1989). However, the BIA in this case rejected this precise argument and determined that the respondents "have not shown compelling reasons for being unwilling to return to Bangladesh based on the severity of the past persecution, or that there is a reasonable possibility of other serious harm if removed there." A review of the administrative record does not compel the conclusion that the BIA erred in its analysis on this ground. Guzmán, 327 F.3d at 15 (BIA's findings of fact will not be reversed "unless the record evidence would compel a reasonable factfinder to make a contrary determination").

-18-

**C.  Relief Pursuant to the Convention Against Torture**

Both the IJ and BIA found that Petitioners had failed to meet their burden for relief under the CAT, since they had not established that it is more likely than not that they would be subject to torture by or with the "acquiescence" of a member of the government of Bangladesh upon their return. See 8 C.F.R. §§ 208.16 (c)(2) (indicating burden of proof) & 208.18(a)(1) (defining "torture").[8]  In their challenge to this finding, Petitioners indicate only that they should be granted relief "since there is a clear probability that they will suffer torture if returned to Bangladesh."  However, it is a petitioner's burden to prove entitlement to relief under the CAT, see Sulaiman v. Gonzales, 429 F.3d 347, 351 (1st Cir. 2005) (petitioner's burden of proof for relief under the CAT is as high as in withholding of removal context, "the petitioner has to show that it is more likely than not that he will be [] tortured in his country of origin"), and the IJ found that respondents presented "little, if any, evidence" to substantiate their claim.  See also Romilus, 385 F.3d at 8 (indicating there is no subjective component to a claim for relief under the CAT and that "[t]o establish a prima facie claim under the CAT, an applicant must offer specific objective evidence

---

[8]  This section of the INS implementing regulations defines "torture" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."

showing that he will be subject to [torture]" in proposed country of removal).  Under our deferential standard of review, Petitioners have offered us no reason to disturb the IJ and BIA's substantially supported findings on this ground.  See id. at 5.  We must therefore deny the petition for review of the Petitioners' claim for relief under the CAT.

### III.  Conclusion

The petition for review of the BIA's determination regarding cancellation of removal is dismissed for lack of jurisdiction, and the remainder of the petition is denied because we hold the BIA's decision was supported by substantial evidence.