# United States Court of Appeals
## For the First Circuit

---

No. 09-2598

PABLO SANTANA-MEDINA,

Petitioner,

v.

ERIC H. HOLDER, JR.,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, <u>Chief Judge</u>,
Boudin and Howard, <u>Circuit Judges</u>.

---

<u>Lolita J. Semidey</u> was on brief for petitioner.
<u>Brianne Whelan Cohen</u>, Trial Attorney, Office of Immigration Litigation, <u>William C. Peachey</u>, Assistant Director, and <u>Tony West</u>, Assistant Attorney General, Civil Division, were on brief for respondent.

---

August 5, 2010

---

**LYNCH**, **Chief Judge**.  Petitioner Pablo Santana-Medina, a native and citizen of the Dominican Republic, seeks review of a Board of Immigration Appeals (BIA) decision denying his application for cancellation of removal under 8 U.S.C. § 1229b(b).  That provision requires an alien to show, inter alia, "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  8 U.S.C. § 1229b(b)(1)(D).

Santana-Medina claims that he satisfies this requirement because his thirteen-year-old son, a U.S. citizen, would face exceptional and extremely unusual hardship if Santana-Medina were deported.  The BIA relied on the IJ's reasoning and rejected this argument.  Santana-Medina now argues that the IJ applied an incorrect legal standard by failing to consider his son's best interests as the primary criterion in its analysis, which Santana-Medina claims is required under the United Nations Convention on the Rights of the Child.

By statute, orders regarding cancellation of removal are not subject to judicial review, see 8 U.S.C. § 1252(a)(2)(B)(I), unless the appeal raises a question of law or a constitutional claim, see 8 U.S.C. § 1252(a)(2)(D).  Santana-Medina's legal claim on appeal was not made before the IJ or BIA, and his other claims

-2-

merely challenge the IJ's factual determinations.  We hold that we lack jurisdiction to review the denial of his application.

                                    I.

          In 1989, Santana-Medina arrived in the United States without inspection.  He has lived in San Juan, Puerto Rico since 1990.  In 1991, he married a U.S. citizen, and his then-wife filed an immediate relative visa petition for him.  The visa was approved, and on December 8, 1992, Santana-Medina obtained conditional resident status.

          On September 30, 1994, Santana-Medina and his then-wife filed a joint I-751 petition to remove the conditions on his permanent residence.  However, numerous inconsistencies in Santana-Medina's interview with an immigration official on June 15, 1995 drew into question whether he and his wife had entered into a good faith marriage.  On August 11, 1995, the I-751 petition was denied and Santana-Medina's status as a permanent resident was terminated.

          In 1996, Santana-Medina had a son as a result of an affair with another woman.  The son was born in Puerto Rico and is now in his early teens.  He is a U.S. citizen and lives with his mother, step-father, and three half-siblings in San Juan.

          On August 27, 2001, Santana-Medina's marriage ended, and on January 15, 2004, he filed an I-751 petition to remove the conditions on his residence; he filed this as a waiver application, claiming that he had entered into a good faith marriage.  On

October 5, 2006, the Department of Homeland Security (DHS) denied the petition and terminated Santana-Medina's conditional resident status.

On January 30, 2007, DHS initiated removal proceedings and filed a Notice to Appear, charging that Santana-Medina was removable because his conditional permanent resident status had been terminated. Santana-Medina responded by reapplying for a waiver under I-751, but at a October 12, 2007 hearing before an IJ, he confirmed that he would instead pursue only cancellation of removal and, in the alternative, voluntary departure.

In two hearings before an IJ on May 14, 2008, and May 28, 2008, Santana-Medina argued that he was entitled to cancellation of removal because his son, who was eleven at the time, would face exceptional and extremely unusual hardship if Santana-Medina were deported. In support of his claim, Santana-Medina testified about his relationship with his son and introduced a report from a psychologist and a letter from a social worker at his son's school. The child and the child's mother also testified.

Santana-Medina testified that if he were deported back to the Dominican Republic, the child's mother would not let him take his son with him. He said that although his son lives with his mother, he presently has custody of his son from Friday at 5 p.m. to Sunday at 5 p.m. He explained that when he and his son spend time together, they frequently play baseball, and Santana-Medina

-4-

purchases many necessities for his son. Santana-Medina concluded that if he were deported, it would be traumatic for his son and would likely prevent his son from becoming a professional athlete, as Santana-Medina hopes for him.

The psychologist's report suggested that if Santana-Medina were deported, his son would likely suffer severe emotional harm because "[w]hen the child lo[ses] contact with his father it can be infer[red] that he could be affected emotionally suffering severe depression." But some of the statements in this report were denied by Santana-Medina in his testimony.

The social worker's letter stated that Santana-Medina regularly spent time with his son, provided for him, and played baseball with him often, and that his son expressed a desire to be with him. The letter concluded that it would be better for the son if his father were close enough to stay in frequent contact.

The son's mother testified that Santana-Medina is a good father who spends time with him frequently and takes care of all of his needs, except for lodging and food during the week. She added that Santana-Medina was able to take his son out for entertainment and to play baseball, which she could not do because of her three other small children. She suggested that Santana-Medina's deportation would be traumatic to her son because of his closeness to his father and his father's ability to give his son undivided attention. The child testified that he enjoyed spending time with

his father and that they frequently played baseball and went places together. In addition, Santana-Medina's employers, who employed him for a period of years as a handyman, attested to his trustworthiness and reliability.

In an oral decision at the end of the May 28, 2008, hearing, the IJ found Santana-Medina ineligible for cancellation of removal. The IJ held that Santana-Medina had satisfied some of the requirements for cancellation because he had been continuously present in the United States for no less than ten years, was a person of good moral character, and had not been convicted of relevant offenses. See 8 U.S.C. § 1229b(b)(1)(A)-(C). However, after the IJ weighed the relevant testimony and supporting documentation, the IJ held that Santana-Medina had not established the statutory standard of "exceptional and extremely unusual hardship" to his son as a result of his removal. See id. § 1229b(b)(1)(D).

The IJ stated that the relevant standard was whether the alien's son "would suffer hardship that is substantially beyond that which ordinarily would be expected to result from a person's departure," but not necessarily "unconscionable" hardship. The IJ found that Santana-Medina had not satisfied this standard because, although the evidence clearly showed Santana-Medina was a good father who provided for and spent time with his son, "[t]he hardship that the respondent's son will suffer is a hardship that

-6-

is typical of any child who would have a father transfer from one state to another state." The IJ cited the fact that Santana-Medina could likely remain in close contact with his son even after deportation, since Santana-Medina would be in the Dominican Republic, not far from Puerto Rico. The IJ also questioned the credibility of the psychologist's report, deeming it "a little bit tailor made" and noting numerous inaccuracies in the report.

On October 23, 2009, the BIA affirmed the IJ's decision and adopted its reasoning. The BIA specifically found that although Santana-Medina had shown his son would be adversely affected by his removal, he had failed to show exceptional and extremely unusual hardship substantially beyond the hardships ordinarily associated with deportation. The BIA also affirmed the IJ's order granting voluntary departure.

## II.

Ordinarily, by statute, "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b," which governs cancellation of removal decisions. 8 U.S.C. § 1252(a)(2)(B)(I); see also Kucana v. Holder, 130 S. Ct. 827, 831-32, 837 (2010). Jurisdiction may be restored, however, if an appeal of a decision regarding cancellation of removal raises "constitutional claims or questions of law," as opposed to factual issues. 8 U.S.C. § 1252(a)(2)(D); Parvez v. Keisler, 506 F.3d 93, 96 (1st Cir. 2007).

Santana-Medina claims that he falls under this exception because his appeal raises a question of law regarding the legal standard the IJ applied for cancellation of removal. He argues that because his petition is based on hardship to his child, the IJ was required to apply the "exceptional and extremely unusual hardship" standard, 8 U.S.C. § 1229b(b)(1)(D), in a manner consistent with the United Nations Convention on the Rights of the Child, adopted Nov. 20, 1989, 1577 U.N.T.S. 3, reprinted in 28 I.L.M. 1448, which Santana-Medina takes as "customary international law." He specifically argues that when the IJ considered whether Santana-Medina's removal would result in exceptional and extremely unusual hardship to his son, the IJ ignored the Convention's Article 3(1) requirement that "the best interests of the child" be made a "primary consideration." See id., 1577 U.N.T.S. at 46, 28 I.L.M. at 1459.

We need not determine whether the Convention is binding law or whether it even applies in the removal context. Santana-Medina never made this argument before the IJ or the BIA. It is therefore waived, and Santana-Medina cannot invoke it as a basis for jurisdiction.

Santana-Medina also argues that the psychologist's report and the facts he presented regarding his son's current family situation and emotional needs satisfied the exceptional and extremely unusual hardship standard, and that the IJ erred in

determining otherwise.  This is a plain challenge to the IJ's factual determination; indeed, Santana-Medina does not even style this as a claim of legal error.  As the government argues, this is at best a challenge to the way the IJ weighed the evidence presented, not to the standards it applied in doing so.  "To trigger our jurisdiction" under 8 U.S.C. § 1252(a)(2)(D), "the putative constitutional or legal challenge must be more than a disguised challenge to factual findings."  <u>Pan</u> v. <u>Gonzales</u>, 489 F.3d 80, 84 (1st Cir. 2007); <u>see</u> <u>also</u> <u>Parvez</u>, 506 F.3d at 97.

The petition for review is <u>dismissed for lack of jurisdiction</u>.