[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10552
_____

Agency No. A095-654-362

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 17, 2012
JOHN LEY
CLERK

HAMELT RODOLFO BEDOYA-MELENDEZ,
a.k.a. Hamelt Rodolfo Bedoya,
a.k.a. Hamelt Bedoya,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 17, 2012)

Before MARCUS, COX, and SILER,[*] Circuit Judges.

COX, Circuit Judge:

_____

[*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Hamelt Rodolfo Bedoya-Melendez seeks review of the decision of the Board of Immigration Appeals that he is not eligible for special rule cancellation of removal under § 240A of the Immigration and Nationality Act (codified at 8 U.S.C. § 1229b(b)(2)). The Board denied Bedoya-Melendez's petition because he failed to show that he was "battered or subjected to extreme cruelty" by his American citizen spouse. We conclude that the Board has discretion to make this determination, and therefore we lack jurisdiction to review the Board's decision that Bedoya-Melendez is not a battered spouse.

## I. FACTS AND PROCEDURAL HISTORY

The underlying facts are largely irrelevant to this appeal. We state them briefly to provide context for this opinion. Bedoya-Melendez, a Peruvian citizen, entered the United States in 2003 as a nonimmigrant visitor. In 2004, he married an American citizen, Nancy Pinedo. A week later, she asked the United States Citizenship and Immigration Service to adjust Bedoya-Melendez's immigration status. But, when the honeymoon ended, the marriage quickly soured. Bedoya-Melendez alleges that Nancy began slapping him when she became upset. And, he alleges she also falsely led him to believe he had HIV. Less than six months after they married, Bedoya-Melendez and Nancy separated, and eventually divorced. Bedoya-Melendez alleges that Nancy and her father then brought several frivolous lawsuits against him.

2

Meanwhile, the Citizenship and Immigration Service declined to adjust Bedoya-Melendez's immigration status, and the Department of Homeland Security sought to remove him. At a hearing in late 2004, Bedoya-Melendez admitted that he was removable, but petitioned for asylum. He later withdrew that petition.

In 2007, Bedoya-Melendez filed a petition for special rule cancellation of removal, claiming that he was a battered spouse under 8 U.S.C. § 1229b(b)(2). To establish his eligibility for this relief, Bedoya-Melendez had to show five things:

> (i)(I) [he had] been battered or subjected to extreme cruelty by a spouse . . . who is or was a United States citizen . . .;
>
> . . .
>
> (ii) [he had] been physically present in the United States for a continuous period of not less than 3 years immediately preceding the date of [his] application, . . .;
>
> (iii) [he had] been a person of good moral character during such period . . .;
>
> (iv) [he] is not inadmissible [for certain reasons not applicable to this case]; and
>
> (v) the removal would result in extreme hardship to [him] . . . .

8 U.S.C. § 1229b(b)(2)(A). This appeal concerns only the first element (hereafter the "battered-spouse determination"). Before the immigration judge, Bedoya-Melendez testified about Nancy's behavior. The immigration judge concluded that Nancy's

3

actions did not make Bedoya-Melendez a battered spouse under § 1229b(b)(2). His petition was denied for that reason. Bedoya-Melendez appealed to the Board, but it also denied his petition, issuing its own decision. Bedoya-Melendez then petitioned this court to review the Board's decision.[1]

## II. ISSUES ON APPEAL

This appeal presents two issues: (1) does the Board have discretion to decide if an alien is a battered spouse under § 1229b(b)(2); and (2) if the answer to the first issue is no, is Bedoya-Melendez a battered spouse under § 1229b(b)(2)?

## III. CONTENTIONS OF THE PARTIES

It is undisputed that we lack jurisdiction to review the Board's discretionary decisions under § 1229b. *See* 8 U.S.C. § 1252(a)(2)(B); *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1222 (11th Cir. 2006). But, it is also undisputed that we have jurisdiction to review constitutional claims and questions of law arising under that provision. *See* 8 U.S.C. § 1252(a)(2)(D); *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1322 (11th Cir. 2007). Because § 1252(a)(2)(B) & (D) impose statutory

---

[1] The immigration judge also concluded that Bedoya-Melendez had failed to show that he would suffer extreme hardship if removed. But the Board did not consider this portion of the immigration judge's decision. It based its denial solely on Bedoya-Melendez's failure to meet the battered-spouse requirement. "When the [Board] issues a decision, we review only that decision." *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007). Because the Board did not consider Bedoya-Melendez's failure to satisfy the extreme hardship requirement, that issue is not before us.

conditions on our jurisdiction, we must first determine if those conditions are met. *See Bahar v. Ashcroft*, 264 F.3d 1309, 1311 (11th Cir. 2001).

This court has not yet considered whether the battered-spouse determination under § 1229b(b)(2) is a question of law or a discretionary decision. Bedoya-Melendez contends that it is a question of law. He relies primarily on a Ninth Circuit case, *Hernandez v. Ashcroft*, 345 F.3d 824 (9th Cir. 2003), which held that the phrase "has been battered or subjected to extreme cruelty" establishes an objective legal standard to guide the battered-spouse determination under § 1229b(b)(2).

The Attorney General counters that five other circuits have reached the opposite conclusion. These circuits reasoned that the phrase "has been battered or subjected to extreme cruelty" is not self-explanatory and that reasonable minds could differ as to its meaning. And, because Congress did not define this phrase, it intended to grant the Attorney General discretion to make this decision. These circuits also concluded that 8 C.F.R. § 204.2(c)(1)(vi), which interprets almost identical language in a different provision of the Immigration and Nationality Act, does not establish an objective legal standard for the battered-spouse determination . For the reasons stated below, we agree with the Attorney General and the majority of our sister circuits.

5

## IV. DISCUSSION

Our jurisdiction over Bedoya-Melendez's petition turns on whether the battered-spouse determination is a question of law or a discretionary decision. A question of law involves "the application of an undisputed fact pattern to a legal standard." *Jean-Pierre*, 500 F.3d at 1322. For example, under § 1229b(b)(2), an alien must be continuously present in the United States for three years before he can file a petition for cancellation of removal. 8 U.S.C. § 1229b(b)(2)(A)(ii). Congress defined "continuous physical presence" in § 1229b(b)(2)(B). A court need only apply this definition to the undisputed facts to determine if this statutory requirement is met. *See Najjar v. Ashcroft*, 257 F.3d 1262, 1298 (11th Cir. 2001) ("Either the petitioner has been continuously present in the United States for [three] years or the petitioner has not.") (quoting *Kalaw v. INS*, 133 F.3d 1147, 1151 (9th Cir. 1997)).

A discretionary decision, on the other hand, requires an adjudicator to make a judgment call. For example, under § 1229b(b)(2), an alien must show that removal will "result in extreme hardship to [himself]." § 1229b(b)(2)(A)(v). In *Najjar v. Ashcroft*, we examined a previous version of § 1229b, which also contained the phrase "extreme hardship." 257 F.3d at 1298. We held that the Attorney General has discretion to determine when an alien will face an "extreme hardship" upon removal. *See id.* at 1297; *see also Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332-

6

33 (11th Cir. 2003) (holding that the phrase "exceptional and extremely unusual hardship" in § 1229b(b)(1) grants the Attorney General discretion). We based our holding, in part, on the Supreme Court's decision in *INS v. Jong Ha Wang*, 450 U.S. 139, 101 S. Ct. 1027 (1981). In *Wang*, the Supreme Court explained that the phrase "extreme hardship" is "not self-explanatory, and reasonable men could easily differ as to [its] construction." *Id.* at 144, 101 S. Ct. at 1031. The Court concluded that Congress had vested the Attorney General with discretion to interpret the phrase "extreme hardship." *See id.* And, the Court refused to substitute its judgment for that of the Attorney General. *See id.*; *see also Wilmore v. Gonzales*, 455 F.3d 524, 527 (5th Cir. 2006) (citing *Wang* for the proposition that a statutory term confers discretion on the Attorney General when it is "not self-explanatory, and reasonable men could easily differ as to [its] construction").

Other circuits have characterized a discretionary decision as lacking an "algorithm" or "formula" on which a court can base its review. *See Perales-Cumpean v. Gonzalez*, 429 F.3d 977, 982 (10th Cir. 2005) ("Decisions that involve a 'judgment call' by the agency, or for which there is 'no algorithm' on which review may be based, are considered discretionary . . . ."); *Rosario v. Holder*, 627 F.3d 58, 62 (2d Cir. 2010) ("We ask whether the BIA is expressing legal doctrine or whether it is engaged in the factfinding and factor-balancing that are at the core of its discretion.")

7

Section 1229b(b)(2)'s requirement that an alien be "battered or subjected to extreme cruelty" does not establish an objective legal standard on which a court can base its review. The word "battered" and the clause "subjected to extreme cruelty" are not self-explanatory and reasonable minds could differ as to their meaning in this provision. Thus, we hold that the battered-spouse determination under § 1229b(b)(2) is a discretionary decision reserved to the Attorney General. *See Wang*, 450 U.S. at 144, 101 S. Ct. at 1031. We consider the meaning of the word "battered" and the clause "subjected to extreme cruelty" in turn.

We first turn to the dictionary definition of the verb "batter." The Oxford English Dictionary defines "batter" as "to beat continuously and violently so as to bruise or shatter." Oxford English Dictionary 1005 (2d ed., 1989). Webster's Third New International Dictionary provides a similar definition: "to beat with successive blows: beat repeatedly and violently so as to bruise, shatter, or demolish." Webster's Third New International Dictionary 187 (2002). Finally, the American Heritage Dictionary defines "batter" as "to hit heavily and repeatedly with violent blows." American Heritage Dictionary 152 (5th ed., 2011). While these definitions suggest some boundaries for the word "battered" in § 1229b(b)(2), they do not establish an objective legal standard. The words "continuously," "successive," and "repeatedly" are ambiguous in this context. These words do not tell us how many blows an alien

8

must endure before one becomes a battered spouse.  Nor do these dictionary definitions clearly define the force these blows must exert.  Thus, reasonable minds could differ as to what an alien must endure before he has been "battered."

Similarly, the clause "subjected to extreme cruelty" does not present an objective legal standard.  Webster's Third New International Dictionary defines "cruelty" as "the quality or state of being cruel," which means "disposed to inflict pain . . . ."  Webster's Third New International Dictionary 546 (2002).  Webster's dictionary also includes a definition of cruelty specifically applicable to domestic relationships: "conduct of either party in a divorce action that endangers the life or health of the other."  *Id.*  These definitions draw no bright lines.  Reasonable minds could easily differ as to what conduct shows a disposition "to inflict pain" and what conduct "endangers [a spouse's] life or health."  Moreover, as other circuits have said, the adjective "extreme" requires the Attorney General to make a judgment call about "whether the cruel conduct alleged is sufficiently extreme to implicate the purposes of the statute."  *Perales-Cumpean*, 429 F.3d at 982; *see Wilmore*, 455 F.3d at 528 (citing *Perales-Cumpean*).

The context in which Congress adopted the original version of § 1229b(b)(2) reinforces our conclusion that this provision does not establish an objective legal standard. Congress enacted the original version of § 1229b(b)(2) as part of the

Violence Against Women Act of 1994.  *See* Pub. L. No. 104-322 § 40703, 108 Stat. 1796, 1955 (1994).  This Act sought to address gender-motivated violence, including domestic violence.  Because Congress adopted § 1229b(b)(2) in this context, the word "battered" and the clause "subjected to extreme cruelty" arguably refer to domestic violence.  But, that conclusion does not get us very far because domestic violence does not have a rigid definition.[2]  Nor can we discern from the text of § 1229b(b)(2) in what manner and to what degree the word "battered" and the clause "subjected to extreme cruelty" relate to domestic violence.[3]

---

[2] In 2006, Congress added § 40002 (codified at 42 U.S.C. § 13925) to the Violence Against Women Act.  Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 3, 119 Stat. 2960, 2965 (2006).  This provision purported to define several terms used throughout the Violence Against Women Act.  *Id.* at 2964.  Section 13925(a)(6) provides that:

> The term "domestic violence" includes felony or misdemeanor crimes of violence committed by a current or former spouse of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction receiving grant monies, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction.

42 U.S.C. § 13925(a)(6).  This subsection does not define "domestic violence."  It merely says that this term "includes" certain "crimes of violence."  *Id.*  This subsection does not limit the term "domestic violence" to such crimes.  Instead, it leaves open the possibility that this term also includes other abusive acts which are not "felony or misdemeanor crimes of violence."

[3] While we do not think the word "battered" in § 1229b(b)(2) has an objective definition, we can say what that word does not mean.  "Battered" does not refer to common-law battery.  *But see Hernandez v. Ashcroft*, 345 F.3d 824 (9th Cir. 2003).  At common law, an "unwelcome kiss or caress" was a battery.  Bryan A. Garner, A Dictionary of Modern Legal Usage 100 (2d ed., 1995).

But we do not end our analysis with the text of § 1229b. Both the Secretary of Homeland Security and the Attorney General have authority to craft regulations interpreting the Immigration and Nationality Act. *See* 8 U.S.C. § 1103. These regulations could limit the Attorney General's discretion in ways that make the battered-spouse determination effectively nondiscretionary. *Cf. Cadet v. Bulger*, 377 F.3d 1173, 1180–81 (11th Cir. 2004) (federal regulations defining torture created a legal standard which made the Board's decision subject to review). Bedoya-Melendez directs our attention to 8 C.F.R. § 204.2(c)(1)(vi), which provides:

> For the purpose of this chapter, the phrase "was battered by or was the subject of extreme cruelty" includes, but is not limited to, being the victim of any act or threatened act of violence, including any forceful detention, which results or threatens to result in physical or mental injury. Psychological or sexual abuse or exploitation, including rape, molestation, incest (if the victim is a minor), or forced prostitution shall be considered acts of violence. Other abusive actions may also be acts of violence under certain circumstances, including acts that, in and of themselves, may not initially appear violent but that are a part of an overall pattern of violence.

8 C.F.R. § 204.2(c)(1)(vi). Bedoya-Melendez contends that this regulation establishes an objective legal standard for the battered-spouse determination under § 1229b.

---

If "battered" means an unwelcome kiss or caress, married aliens could easily allege their eligibility for relief under § 1229b(b)(2). But the text and the history of §1229b(b)(2) suggest a different result. Section 1229b(b)(2) is, after all, a "special rule" applicable only to battered spouses. Aliens who are not battered spouses must seek cancellation of removal under § 1229b(b)(1), which has more stringent eligibility requirements.

We reject this contention. Section 204.2(c)(1)(vi) was not promulgated under § 1229b and does not apply to that statutory provision. Instead, it was promulgated under 8 U.S.C. §§ 1154 & 1255. These sections authorize an alien to petition the Attorney General for an adjustment in his immigration status to that of a lawful permanent resident. An alien can file a petition under these sections whether or not he is facing removal. *See* § 1255 ("[T]he status of [an] alien having an approved petition for classification as [battered spouse] may be adjusted by the Attorney General [if he files a petition and meets certain other requirements]."). Conversely, § 1229b applies specifically to aliens whom the Attorney General has ordered removed. § 1229b(b)(2)(A) ("The Attorney General may cancel removal . . . .").

Additionally, § 204.2(c)(1)(vi) is located in Title 8, Chapter I of the Code of Federal Regulations, and it specifically limits its applicability to that chapter. *See* § 204.2(c)(1)(vi) (stating "[f]or the purpose of this chapter . . . ."). Bedoya-Melendez has not identified (and our research has not found) any regulation in Title 8, Chapter I which applies to the battered-spouse determination under § 1229b(b)(2). The Board did not believe that § 204.2(c)(1)(vi) applied to the battered-spouse determination under § 1229b(b)(2). (R. at 4–5.) Instead, the Board said that § 204.2(c)(1)(vi) is "useful in ascertaining the parameters of the [phrase 'battered or subjected to extreme

12

cruelty'] as applied in the context of cancellation of removal."[4]  *Id.*  We agree that § 204.2(c)(1)(vi), which interprets almost identical language, could be useful in making the battered-spouse determination .  But, this regulation does not establish a binding legal standard for that determination.[5]

And, even if we were to assume that 8 C.F.R. § 204.2(c)(1)(vi) applies to the battered-spouse determination  under § 1229b(b)(2), that regulation does not create an objective legal standard.  Instead, § 204.2(c)(1)(vi) merely suggests how the Attorney General should exercise his discretion.  First, the regulation does not draw a bright line between facts which make one person a battered spouse and another person not a battered spouse.  The regulation expressly states that "was battered by or was the subject of extreme cruelty" "includes, *but is not limited to*" certain conduct. 8 C.F.R. § 204.2(c)(1)(vi) (emphasis added).  The "not limited to" language strongly suggests the Attorney General can exercise discretion in each case.

---

[4] The Board's opinion actually cites § 204.2(e)(1)(vi) (applicable to battered children) rather than § 204.2(c)(1)(vi) (applicable to battered spouses).  However, these provisions are identical.

[5] The six other circuits which have considered this issue have assumed, without discussion, that § 204.2(c)(1)(vi) applies to the battered-spouse determination .  *See Rosario v. Holder*, 627 F.3d 58 (2d Cir. 2010); *Johnson v. U.S. Att'y Gen.*, 602 F.3d 508 (3d Cir. 2010); *Stepanovic v. Filip*, 554 F.3d 673 (7th Cir. 2009); *Wilmore v. Gonzalez*, 455 F.3d 524 (5th Cir. 2006); *Perales-Cumpean v. Gonzales*, 429 F.3d 977 (10th Cir. 2005); *Hernandez v. Ashcroft*, 345 F.3d 824 (9th Cir. 2003).  But, five of these six circuits (all but the Ninth Circuit) concluded that this regulation does not establish an objective legal standard for the battered-spouse determination.

13

And though the regulation casts a wide net (capturing "any" act or threatened act of violence), we do not know what conduct that net will catch. The "act or threatened act of violence" must "result[] or threaten[] to result in physical or mental injury." *Id.* But the "physical or mental injury" requirement is not self-explanatory and reasonable minds could differ about what this clause means. Because this clause is imprecise, we do not know from the text of the regulation what conduct is included and what conduct is not.

Finally, § 204.2(c)(1)(vi) encompasses "[o]ther abusive actions . . . [that] may not initially appear violent but that are a part of an overall pattern of violence. " The regulation does not offer any guidance as to which acts fall in this category. This imprecision strongly suggests that the Attorney General also retains discretion to make this decision on a case-by-case basis. Because neither the statutory text nor an applicable regulation establish an objective legal standard on which to base our review, we hold that the battered-spouse determination under § 1229b(b)(2) is a discretionary decision reserved to the Attorney General.

Of the six other circuits that have considered this issue, five have concluded that the battered-spouse determination is a discretionary decision. *Rosario v. Holder*, 627 F.3d 58 (2d Cir. 2010); *Johnson v. U.S. Att'y Gen.*, 602 F.3d 508 (3d Cir. 2010); *Stepanovic v. Filip*, 554 F.3d 673 (7th Cir. 2009); *Wilmore v. Gonzalez*, 455 F.3d 524

14

(5th Cir. 2006); *Perales-Cumpean v. Gonzales*, 429 F.3d 977 (10th Cir. 2005). Only the Ninth Circuit has reached a contrary conclusion. In *Hernandez v. Ashcroft*, the court held that the phrase "battered or subjected to extreme cruelty" establishes an objective legal standard to determine if an alien is a victim of domestic violence. 345 F.3d 824, 834 (9th Cir. 2003). Despite the court's pronouncement that domestic violence (and thus the phrase "battered or subjected to extreme cruelty") has a clinical definition, the court struggled to articulate that definition. *Id.* at 834, 836–39. Instead, the court relied on 8 C.F.R. § 204.2(c)(1)(vi). *Id.* at 839–840. But, as explained above, this regulation does not establish an objective legal standard for the battered-spouse determination . We find *Hernandez* unpersuasive.

## V. CONCLUSION

Because the battered-spouse determination under § 1229b(b)(2) is a discretionary decision, we lack jurisdiction to review the Board's decision that Bedoya-Melendez is not a battered spouse. *See* 8 U.S.C. § 1252(a)(2)(B). For that reason, his petition is dismissed.

PETITION DISMISSED.