# United States Court of Appeals
## For the First Circuit

No. 12-2523

ARKEL BALLARDO CASTRO,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

John P. Garan on brief for petitioner.
Gregory M. Kelch, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Linda S. Wernery, Assistant Director, Office of Immigration Litigation, on brief for respondent.

August 16, 2013

**LYNCH, Chief Judge**.  Arkel Ballardo Castro applied for "special rule cancellation" of his removal from the United States under section 203 of the Nicaraguan and Central American Relief Act (NACARA), Pub. L. No. 105-100, §§ 201-204, 111 Stat. 2160, 2193-2201, as amended by Pub. L. No. 106-386, § 1510(b), 114 Stat. 1464, 1531 (2000).  He applied for relief as a "child [who] has been battered or subjected to extreme cruelty" by a parent who acquired lawful permanent resident status under the NACARA.  See id. § 203.  An Immigration Judge (IJ) found that Castro did not merit discretionary cancellation of removal because he was not "battered or subjected to extreme cruelty."  The Board of Immigration Appeals (BIA) affirmed.  We lack jurisdiction over Castro's petition for review because Castro does not raise a constitutional claim or question of law on appeal.

I.

Castro is a native and citizen of Guatemala who came to the United States illegally in May of 2000.

The Department of Homeland Security (DHS) issued Castro a notice to appear in removal proceedings on September 17, 2007.  In those proceedings, Castro admitted that he was removable as charged but sought cancellation of removal under section 203 of NACARA.

The Victims of Trafficking and Violence Protection Act of 2000 (VTVPA) amended the NACARA cancellation provision, making

additional categories of aliens eligible for this discretionary relief. Under the VTVPA, an alien who "has been battered or subjected to extreme cruelty" by a parent who is a NACARA beneficiary is eligible for cancellation of removal. See Pub. L. No. 106-386, § 1510(b), 114 Stat. 1464, 1531 (2000). Castro seeks cancellation of removal under this provision, claiming that his mother Liliana Castro, a NACARA beneficiary, subjected him to extreme cruelty.[1]

At a merits hearing before an IJ on April 6, 2011, Castro testified that his mother came to the United States when he was nine years old, leaving him in the care of his grandmother and later his uncles. He admitted that his mother traveled to the United States to provide a better life for him.

Castro initially lived with his grandmother and several cousins. He said that his grandmother would hit him for "any little thing that [he] would do" using a belt or a stick.

When Castro was 11 years old he began to live with various uncles, moving to a different uncle's house periodically. As a result of these moves, he changed schools five times after his mother left.

Castro conceded that some uncles were good, but testified that other uncles were bad and would scold and hit him with a "belt

---

[1] Liliana Castro was granted legal permanent resident status under NACARA on February 1, 2007.

or whatever they would have in their hand."  Castro's declaration further explains that his uncles punished him using "belts[,] tree branches, broom sticks and whatever they could put their hands on." He stated that he lived "in constant fear of anyone that lived around [him]."

During this period, Castro spoke to his mother once or twice a month.  She always knew where he was, sent him clothes two to three times a year, and sent his uncles money for his schooling.

Castro reunited with his mother when he came to the United States when he was nineteen years old in 2000.  At the time of the merits hearing, eleven years later, Castro still lived with his mother.  He said he has a good relationship with her and that she "treats [him] like a child still."

Castro also acknowledged that his mother has never physically abused him.  Moreover, he said that his mother did not know that his uncles were abusive until he arrived in the United States, at which time she felt "bad, really bad" and confronted some of them.

In an oral decision, the IJ found that Castro's testimony was credible.  She decided that he was not eligible for "special rule cancellation" of removal under NACARA, however, because he "has not shown that his mother either battered him or subjected him to extreme cruelty."

The IJ noted that Castro's grandmother and uncles mistreated and hit him after his mother left Guatemala when he was nine years old. However, the IJ commented that Ms. Castro left her son "in the hands of family members, she did not know that they abused him, she sent her son money, spoke to him on the phone every two to four weeks, [and] sent him clothes."

The IJ further noted that Ms. Castro had never physically abused her son. The IJ concluded, "[b]ased on [these] facts, I cannot find that [Castro's] mother subjected him to extreme cruelty."

Castro appealed to the BIA. The BIA agreed with the reasoning in the IJ's decision and affirmed. The BIA noted that Castro's mother did not subject him to extreme cruelty because she never physically abused him and was not aware of the abuse he sustained until he came to the United States. The BIA also rejected Castro's argument that his mother should have known that his relatives would be abusive because "there was no evidence to establish this contention."

Castro timely sought review, arguing that the BIA erred in concluding that his mother did not subject him to extreme cruelty.

## II.

Under section 203 of NACARA, the Attorney General has discretion to cancel the removal of deportable aliens who were

"battered or subjected to extreme cruelty" by a spouse or parent that has been granted cancellation of removal under NACARA. NACARA § 203. An applicant seeking NACARA special rule cancellation must "establish by a preponderance of the evidence that he or she is eligible for [that relief] <u>and that discretion should be exercised to grant relief.</u>" 8 C.F.R. § 1240.64(a) (emphasis added).

The federal courts lack jurisdiction to review these discretionary grants to cancel removal. <u>See</u> 8 U.S.C. § 1252(a)(2)(B)(i); <u>Gonzalez-Ruano</u> v. <u>Holder</u>, 662 F.3d 59, 63 (1st Cir. 2011) (noting that section 203 of NACARA is subject to the jurisdiction-stripping provisions of 8 U.S.C. § 1252). An exception to this jurisdictional ban, however, is our authorization to review any "constitutional claims or questions of law" raised in a petition. 8 U.S.C. § 1252(a)(2)(D). Thus, "we cannot review discretionary determinations regarding requests for special rule cancellation of removal under NACARA, absent legal or constitutional error." <u>Gonzalez-Ruano</u>, 662 F.3d at 63.

Because we retain jurisdiction over questions of law under 8 U.S.C. § 1252(a)(2)(D), we exercised jurisdiction where a petitioner argued that the BIA "imposed a new and unprecedented requirement for entitlement to cancellation of removal," reasoning that "the choice and shape of an applicable legal standard is quintessentially a question of law." <u>Ayeni</u> v. <u>Holder</u>, 617 F.3d 67, 71 (1st Cir. 2010).

-6-

In contrast, "discretionary or factual determinations continue to fall outside the jurisdiction of the courts of appeals." Mehilli v. Gonzales, 433 F.3d 86, 93 (1st Cir. 2005) (quoting Vasile v. Gonzales, 417 F.3d 766, 768 (7th Cir. 2005)) (internal quotation marks omitted). Thus, we have typically declined to review whether a petitioner is eligible for discretionary cancellation of removal because he or his family would suffer "extreme hardship" if he were removed. See 8 U.S.C. § 1229b(b)(2)(A)(v), (b)(1)(D). For example, in Elysee v. Gonzales, 437 F.3d 221 (1st Cir. 2006), we lacked jurisdiction where a petitioner claimed that the IJ did not correctly evaluate the hardship he would face if deported. Id. at 224. The petitioner's arguments that the IJ disregarded certain hardships and gave "unfair weight" to other facts were not "questions of law but attacks on the factual findings made and the balancing of factors engaged in by the IJ." Id.

Similarly, we lacked jurisdiction over a petitioner's claim that the IJ erred in deciding that he did not satisfy the "hardship standard" in seeking cancellation of removal. Santana-Medina v. Holder, 616 F.3d 49, 52 (1st Cir. 2010). Again, we distinguished between factual and legal challenges, saying that the petitioner's claim was "at best a challenge to the way the IJ weighed the evidence presented, not to the standards it applied in doing so." Id.

-7-

Other circuits have made similar distinctions. The Seventh Circuit has explained:

> We have interpreted the phrase "questions of law" in 8 U.S.C. § 1252(a)(2)(D) to permit judicial review of only "pure" questions of law. A "pure" question of law arises in situations in which a case comes out one way if the Constitution or statute means one thing, and the other way if it means something different. Therefore, factual or discretionary determinations do not constitute reviewable questions of law under § 1252(a)(2)(D).

Stepanovic v. Filip, 554 F.3d 673, 678 (7th Cir. 2009) (citations omitted).

Castro's sole claim on appeal is that substantial evidence does not support the BIA's finding that his mother did not subject him to extreme cruelty. He argues that the BIA and IJ "let [Castro's] mother off too easily" and that the IJ focused "largely on irrelevant facts." Because Castro attacks factual findings made in the context of a discretionary determination, we lack jurisdiction over his claim. See Mehilli, 433 F.3d at 93.

Castro's appeal focuses on the BIA's and IJ's factual findings, rather than issues of statutory interpretation, because NACARA does not define the phrase "battered or subjected to extreme cruelty." See generally NACARA. Therefore, like the "extreme hardship" determination over which we lack jurisdiction, see, e.g., Santana-Medina, 616 F.3d at 52, "whether an alien has been 'battered or subjected to extreme cruelty' . . . generally entails

a factual judgment, not a legal prescription," <u>Rosario</u> v. <u>Holder</u>, 627 F.3d 58, 63 (2d Cir. 2010); <u>see also</u> <u>Wilmore</u> v. <u>Gonzales</u>, 455 F.3d 524, 527 (5th Cir. 2006) (stating that the term "extreme cruelty" is discretionary because it "is not self-explanatory" and "reasonable men could differ as to its meaning").

Because Castro's mother has never physically hurt him, he now contends that psychological abuse "can be sufficient" to establish extreme cruelty under 8 C.F.R. § 204.2(c)(1)(vi).[2] The DHS's regulation, which interprets nearly identical language in the Immigration and Nationality Act, states in part:

> [The] phrase "was battered by or was the subject of extreme cruelty" includes, but is not limited to, being the victim of any act or threatened act of violence, including any forceful detention, which results or threatens to result in physical or mental injury. Psychological or sexual abuse or exploitation, including rape, molestation, incest (if the victim is a minor), or forced prostitution shall be considered acts of violence.

8 C.F.R. § 204.2(c)(1)(vi). This regulation does not contemplate an objective legal standard. <u>See</u> <u>Rosario</u>, 627 F.3d at 63 (noting that the regulation invites "the exercise of considerable discretion in assessing the totality of the circumstances"); <u>Perales-Cumpean</u> v. <u>Gonzales</u>, 429 F.3d 977, 984 (10th Cir. 2005)

---

[2] Castro references 8 C.F.R. § 204.2(c)(2)(vi), which pertains to "[e]xtreme hardship," not battery or extreme cruelty. <u>See</u> 8 C.F.R. § 204.2(c)(2)(vi). We assume he intended to cite subsection one of 8 C.F.R. § 204.2(c), which discusses "[b]attery and extreme cruelty." <u>Id.</u> § 204.2(c)(1)(vi).

(observing that the regulation "requires consideration of many discretionary factors," as evidenced by phrases such as "includes, but is not limited to" and "may . . . be acts of violence under certain circumstances" (quoting 8 C.F.R. § 204.2(c)(1)(vi)) (internal quotation marks omitted)).

In fact, Castro's argument that psychological abuse "<u>can be</u> sufficient" to constitute extreme cruelty appears to recognize that 8 C.F.R. § 204.2(c)(1)(vi) fails to articulate a nondiscretionary legal standard for the "extreme cruelty" inquiry. Thus, we lack jurisdiction to review the BIA's discretionary determination that Castro was not subjected to extreme cruelty.

In so holding, we join most of our sister circuits, who have also concluded that they lack jurisdiction to review whether a petitioner was "battered or subjected to extreme cruelty" so as to warrant the cancellation of removal.[3] <u>See</u> <u>Bedoya-Melendez</u> v. <u>U.S. Attorney Gen.</u>, 680 F.3d 1321 (11th Cir. 2012); <u>Rosario</u>, 627 F.3d 58; <u>Johnson</u> v. <u>Attorney Gen.</u>, 602 F.3d 508 (3d Cir. 2010);

---

[3] Other circuits have not interpreted the phrase "battered or subjected to extreme cruelty" in section 203 of NACARA. Rather, they have interpreted that same phrase in other provisions governing the discretionary cancellation of removal. <u>See, e.g.</u>, 8 U.S.C. § 1229b(b)(2)(A)(i)(I) (granting the Attorney General discretion to cancel the removal of an alien who has "been battered or subjected to extreme cruelty by a . . . parent who is . . . a United States citizen"). Although not interpreting NACARA special rule cancellation, these cases are persuasive because Congress has not indicated that it intended any difference in meaning when it used the same phrase in different provisions governing relief from removal. <u>See, e.g.</u>, <u>United States</u> v. <u>Blasini-Lluberas</u>, 169 F.3d 57, 63 n.8 (1st Cir. 1999).

<u>Stepanovic</u> v. <u>Filip</u>, 554 F.3d 673 (7th Cir. 2009); <u>Ramdane</u> v. <u>Mukasey</u>, 296 F. App'x 440 (6th Cir. 2008); <u>Wilmore</u> v. <u>Gonzales</u>, 455 F.3d 524 (5th Cir. 2006); <u>Perales-Cumpean</u> v. <u>Gonzales</u>, 429 F.3d 977 (10th Cir. 2005). <u>But see</u> <u>Hernandez</u> v. <u>Ashcroft</u>, 345 F.3d 824 (9th Cir. 2003).

Even if we did have jurisdiction, however, Castro's claim regarding the BIA's factual findings would fail. Substantial evidence supports the BIA's and IJ's conclusion that Castro's mother did not subject him to extreme cruelty where she left him in the care of relatives in Guatemala, provided financial support for him, and was not aware that her brothers abused or mistreated Castro until he came to the United States.

Because Castro does not raise any legal or constitutional issue on appeal, his petition for review is dismissed for lack of jurisdiction.