# United States Court of Appeals
## For the First Circuit

No. 13-1322

JORGE ALBERTO ALVARADO; IRMA YOLANDA CARDOZA,

Petitioners,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Thompson, Selya, and Lipez,
Circuit Judges.

John P. Garan on brief for petitioners.
Stuart F. Delery, Assistant Attorney General, Civil Division,
John S. Hogan, Senior Litigation Counsel, Office of Immigration
Litigation, and Robbin K. Blaya, Trial Attorney, Office of
Immigration Litigation, on brief for respondent.

February 14, 2014

**THOMPSON, Circuit Judge.** Petitioners Jorge Alberto Alvarado and Irma Yolanda Cardoza, husband and wife, left their rural Guatemalan village and entered the United States illegally through the Arizona desert in the mid-1990s. They petition for review of the Board of Immigration Appeals' (BIA) decision upholding an Immigration Judge's (IJ) denial of their application for cancellation of removal. After careful consideration, we deny their petition in part and otherwise dismiss it for want of jurisdiction.

## I. Background

Alvarado and Cardoza have lived and worked in Rhode Island and Massachusetts for over fifteen years. They have two sons: Jorge, born in Guatemala in 1993, and Brian, born in the United States in 1998. In 2008, the couple applied for asylum, which alerted immigration authorities to their presence. Their application was denied, and removal proceedings began shortly thereafter.

In a hearing before an IJ, Alvarado and Cardoza conceded removability but sought cancellation of removal based on the hardship that their departure would cause for their son Brian. To be eligible for cancellation of removal, petitioners must show, among other things, that their removal would result in "exceptional and extremely unusual hardship" to a qualifying relative, such as an American-citizen child. 8 U.S.C. § 1229b(b)(1)(D). Petitioners

-2-

testified that Brian, who was twelve years old on the day of the hearing, would accompany them to Guatemala if they were ordered removed. Having been born in the United States and never having visited Guatemala, Brian, they explained, would face several formidable obstacles in Guatemala.

First, as a gifted student, Brian would not be able to reach his full potential in Guatemala because of the lack of educational opportunities available there. Sallie D'Agostino Pisaturo, a certified school psychologist with a master's degree in mental health counseling, testified on petitioners' behalf. After conducting a psycho-educational evaluation of Brian, speaking with his parents, and contacting his school, Pisaturo concluded that, in terms of academic skill, Brian was one grade level or higher than his peers and possessed "superior intellectual ability." Pisaturo had never been to Guatemala, but she had read widely about the Guatemalan school system. Based on her research, she was concerned that Brian would not receive an appropriate education in Guatemala due to the lack of quality teachers and enrichment programs for high-achieving students, particularly in rural regions. She testified that Brian's needs are "as specialized as those of a child with a learning disability or a developmental disorder because he is gifted." She warned that Brian could become discouraged and develop behavioral problems if not placed in a program that offers the stimulation he requires.

Second, although Brian tested very well in some areas, Pisaturo found that Brian has "weaknesses with getting overloaded easily and [has] some memory difficulties." Brian's parents worry that he is suffering from attention deficit hyperactivity disorder, though it is unclear whether he has ever been diagnosed. They claim his deficiencies require specialized educational interventions that are widely available in the United States but not in Guatemala.

Third, Brian's inability to read, write, or fluently speak Spanish would further hinder his ability to receive an education in Guatemala. Although Brian's parents speak Spanish at home, Brian resists speaking Spanish and has been educated entirely in English. Brian's poor Spanish skills would make it difficult for him to succeed in school, socialize with his peers, and find a good job in Guatemala.

Fourth, if the family returned to Joyabaj, Guatemala, the rural area where petitioners were born, Brian and his family would have to overcome steep practical hurdles. For example, Brian would have to travel at least an hour by bus to reach the nearest school. Besides, Alvarado testified, he could never afford to pay Brian's tuition and bus fare with his income as a farmer in Guatemala.

Finally, and worst of all, Alvarado said, he would fear for Brian's safety in Guatemala, where kidnappings, gangs, and

violent crime are rampant, especially because Brian lacks "street smarts" and does not speak the language.

Taking all this into consideration, the IJ nevertheless found that petitioners had not established that Brian would suffer "exceptional and extremely unusual hardship" if his parents were removed to Guatemala. She acknowledged Pisaturo's testimony that Brian was gifted and might not have access to as good an education in Guatemala as he would in the United States. However, she said, simply because Brian could receive a higher level of education in the United States did not mean that he had the right to expect a comparable level of education in Guatemala. Moreover, petitioners had not shown that an appropriate education did not exist for Brian in Guatemala; rather, Brian's family might have to send him to school far away from their rural village or pay private school tuition to obtain the education best-suited to his needs. The fact that a high-quality education might be more difficult or more expensive to get in Guatemala than in the United States did not trigger "exceptional and extremely unusual hardship" for Brian.

As to the other roadblocks cited by petitioners, the IJ concluded that "[b]asically, there is absolutely nothing else, other than the normal difficulties that individual[s] have to go through when relocating to another country, to base this exceptional and extremely unusual hardship upon." Accordingly, she found that Brian's parents had failed to meet the hardship

-5-

eligibility requirement for cancellation of removal. She therefore denied their application and ordered them removed to Guatemala.

On appeal, the BIA dismissed the couple's petition for relief because it discerned no clear error in the IJ's factual findings and agreed with the IJ's legal and discretionary determinations. Hoping to reverse this trend, Alvarado and Cardoza ask us to review the BIA's decision.

## II. Discussion

Petitioners say the BIA committed legal error when it affirmed the IJ's denial of their application for cancellation of removal. The government counters that we lack jurisdiction to evaluate petitioners' claim.

We begin our discussion with a basic overview of the relief petitioners seek. Cancellation of removal is a form of discretionary relief which, if granted, permits an otherwise removable non-resident alien to remain in the United States. Ayeni v. Holder, 617 F.3d 67, 70 (1st Cir. 2010). It is available only if an alien: (a) has resided in the United States for a continuous period of at least ten years immediately preceding his application; (b) has been a person of good moral character during that period; (c) has not been convicted of certain enumerated offenses; and (d) has established that removal would result in exceptional and extremely unusual hardship to a qualifying family member, such as

an American-citizen child.  Id. (citing 8 U.S.C. § 1229b(b)(1));
Toribio-Chavez v. Holder, 611 F.3d 57, 64 (1st Cir. 2010).

The first three requirements are not at issue here.[1]
Accordingly, we proceed to the fourth prong: whether petitioners
have shown that their American-citizen son Brian is likely to
suffer exceptional and extremely unusual hardship if his parents
are removed to Guatemala.  See 8 U.S.C. § 1229b(b)(1)(D).

This is a high bar to clear.  It requires petitioners to
demonstrate that Brian would suffer hardship that is "substantially
different from, or beyond, that which would normally be expected
from the deportation" of a close relative, though it need not be
"unconscionable."  See Matter of Monreal-Aquinaga, 23 I. & N. Dec.
56, 60, 65 (BIA 2001); see also Matter of Gonzalez Recinas, 23 I.
& N. Dec. 467, 468 (BIA 2002).

Statutes narrowly circumscribe our review on this point.
Courts generally lack jurisdiction to review a judgment concerning
discretionary relief sought under the cancellation of removal
provision.  8 U.S.C. § 1252(a)(2)(B)(i); see Ayeni, 617 F.3d at 70;
Toribio-Chavez, 611 F.3d at 64.  Constitutional claims and
questions of law, however, are excepted from this prohibition.
8 U.S.C. § 1252(a)(2)(D); see Ayeni, 617 F.3d at 70; Toribio-

---

[1] The IJ found that petitioners "definitely established" good
moral character, but only Alvarado (not Cardoza) had demonstrated
continuous presence for the required ten-year period.  Because this
petition is resolved by our review of the hardship prong, we need
not address the continuous-presence element further.

-7-

<u>Chavez</u>, 611 F.3d at 64.  Thus, we have jurisdiction to consider this petition only if it raises a question of constitutional or legal dimension.  See <u>Ayeni</u>, 617 F.3d at 70.

The presence of a constitutional or legal question "is a matter of substance, not a function of labeling."  <u>Id.</u> at 70-71. Styling a factual claim as constitutional or legal error will not transform an unreviewable issue of fact into a reviewable issue of law.  <u>Id.</u> at 71; <u>Pan</u> v. <u>Gonzales</u>, 489 F.3d 80, 84 (1st Cir. 2007). Rather, only a "colorable" claim of constitutional or legal error — i.e., a constitutional or legal argument that is at least potentially valid — can give rise to our jurisdiction.  <u>Pan</u>, 489 F.3d at 84; <u>see also</u> <u>Ayeni</u>, 617 F.3d at 71.

Generally, whether a petitioner satisfies the hardship requirement for cancellation of removal is a factual, not legal, inquiry.  See <u>Parvez</u> v. <u>Keisler</u>, 506 F.3d 93, 96 (1st Cir. 2007). For this reason, we typically decline to review a determination of whether a petitioner has met this burden.  <u>Castro</u> v. <u>Holder</u>, 727 F.3d 125, 128 (1st Cir. 2013).  While we retain jurisdiction over claims that the IJ or the BIA imposed a new or incorrect legal standard, <u>see</u> <u>Ayeni</u>, 617 F.3d at 71, we lack jurisdiction to evaluate the relative evidentiary weight or level of detail accorded to specific facts in the agency's hardship determination, <u>see, e.g.</u>, <u>Hasan</u> v. <u>Holder</u>, 673 F.3d 26, 32-33 (1st Cir. 2012) (no jurisdiction to review a claim that the BIA made only a "cursory"

mention of petitioners' fear for their daughter's safety); Ayeni,
617 F.3d at 72-73 (no jurisdiction to determine whether the BIA
"neglected adequately to weigh the seriousness of [petitioner's]
eldest child's asthma"); Elysee v. Gonzales, 437 F.3d 221, 223-24
(1st Cir. 2006) (no jurisdiction to evaluate whether the BIA erred
by "complete[ly] disregard[ing]" certain hardships to petitioner's
children and giving "unfair weight" to other facts).

        Here, in an effort to avoid the jurisdictional bar,
petitioners attempt to frame their claims from a legal perspective.
First, petitioners say the IJ ignored relevant case law because she
did not cite Matter of Monreal-Aguinaga, 23 I. & N. Dec. 56 (BIA
2001) ("Monreal"), which has been described as one of the BIA's
"seminal interpretations" of the "exceptional and extremely unusual
hardship" requirement. Recinas, 23 I. & N. Dec. at 472-73. This
omission, petitioners claim, led the IJ to commit legal error
because she "completely misunderstood the educational needs
hardship" that they alleged Brian would experience. Second,
petitioners say the IJ "ignored other factors that should have been
included in her analysis" and failed to "weigh[] the hardships to
Brian in the aggregate" as precedent requires.

        The government counters that petitioners' true quarrel is
not with the legal framework applied by the IJ, but with the IJ's
factual determination that the hardship Brian would suffer as a
gifted student did not qualify his parents for cancellation of

-9-

removal.  At best, the government says, petitioners challenge the way the IJ weighed the evidence.  Because we are not empowered to second-guess either an IJ's finding of fact, see Ayeni, 617 F.3d at 71-73, or her balancing of the evidence, see Elysee, 437 F.3d at 223-24, the government contends that we lack jurisdiction to decide petitioners' claims.

It is difficult to pigeonhole the issues raised by petitioners as either factual or legal.  However, though our jurisdiction turns on this question, we need not resolve it.  If the issues are factual, we have no jurisdiction; conversely, if the issues are legal, for the reasons that follow, the decision of the BIA affirming the IJ must be upheld.  Consequently, we believe that this is a case in which we should sidestep the jurisdictional question and proceed directly to the arguments on the merits.

We pause momentarily to note that, ordinarily, federal courts may not exercise "hypothetical jurisdiction."  Royal Siam Corp. v. Chertoff, 484 F.3d 139, 143 (1st Cir. 2007).  In other words, we usually "may not assume the existence of jurisdiction in order to decide the merits of a case or controversy."  Id.  But unlike Article III jurisdiction, which we may never dodge, we may occasionally bypass statutory jurisdiction.  Id. at 144 (citing Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 426 & n.11 (1st Cir. 2007); Nisselson v. Lernout, 469 F.3d 143, 150-51 (1st Cir. 2006); Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys., 173

-10-

F.3d 46, 54 (1st Cir. 1999)). In the immigration context, we have put aside ambiguous jurisdictional questions when precedent clearly dictates the result on the merits. See, e.g., Royal Siam Corp., 484 F.3d at 144; Rivera-Martinez v. Ashcroft, 389 F.3d 207, 209 n.7 (1st Cir. 2004) (per curiam); Seale v. INS, 323 F.3d 150, 152, 157 (1st Cir. 2003). Here, the question of whether we possess statutory jurisdiction under 8 U.S.C. § 1252(a)(2)(D) is not easily answered, but the outcome on the merits is quite straightforward. Thus, without further ado, we pass over the jurisdictional issue and press on with the substance of petitioners' claims.

First, petitioners say that the IJ improperly ignored critical case law when she did not cite Monreal in her analysis. In Monreal, the BIA laid out the factors to be considered when assessing "exceptional and extremely unusual hardship" in cancellation of removal cases, including the age, health, and circumstances of the qualifying relative. 23 I. & N. Dec. at 63. The BIA cribbed these factors from its earlier decision, Matter of Anderson, 16 I. & N. Dec. 596 (BIA 1978), which described the rubric for evaluating "extreme hardship" in suspension of deportation cases.[2] Monreal, 23 I. & N. Dec. at 63. As an example

---

[2] In 1996, Congress replaced the provisions providing for suspension of deportation, 8 U.S.C. § 1254(a)(1) (1994) (repealed 1996), with provisions providing for cancellation of removal, 8 U.S.C. § 1229b(b). Monreal, 23 I. & N. Dec. at 58. "Under the prior law regarding suspension of deportation, an alien . . . seeking that form of relief had to establish that he or his qualifying relative would suffer 'extreme hardship' if deported."

of someone who might be able to demonstrate the requisite level of hardship based on these factors, the BIA said a "strong applicant might have a qualifying child with . . . <u>compelling special needs in school</u>." <u>Id.</u> (emphasis added).

Because the IJ did not cite <u>Monreal</u>, petitioners aver that she did not consider whether Brian's needs as a gifted student could be deemed "compelling special needs in school" for the purpose of establishing "exceptional and extremely unusual hardship." They say the IJ instead misconstrued their argument as asserting that Brian would suffer in Guatemala because he would not receive the same level of education there as he would in the United States — a deprivation which the BIA repeatedly has found does not rise to the level of "exceptional and extremely unusual hardship." <u>See, e.g.</u>, <u>Matter of Andazola-Rivas</u>, 23 I. & N. Dec. 319, 323 (BIA 2002).

While it is true that the IJ did not refer to <u>Monreal</u> by name, it is clear that she followed its precepts in her analysis. Like the BIA in <u>Monreal</u>, she listed the factors to be considered when assessing "exceptional and extremely unusual hardship" in cancellation of removal cases, citing <u>Anderson</u> as the source. <u>See</u> <u>Monreal</u>, 23 I. & N. Dec. at 63. Moreover, as part of her balancing

_____

<u>Id.</u> (citing 8 U.S.C. § 1254(a)(1) (1994) (repealed 1996)). Congress intended to tighten the hardship standard by moving from "extreme hardship" to "exceptional and extremely unusual hardship." <u>Id.</u> at 59 (citing H.R. Conf. Rep. No. 104-828 (1996)).

-12-

of those factors, she explicitly considered Brian's heightened educational needs as a gifted child, but concluded that (1) the fact that Brian might receive a better education in the United States did not mean that he had a right to receive a comparable education in Guatemala, and (2) petitioners had not shown that Brian could not obtain an adequate education in Guatemala, though it might be more costly or less convenient for his family to procure it. And though petitioners spill much ink explaining how gifted students, as well as students with learning disabilities, can have "compelling special needs in school" capable of supporting an "exceptional and extremely unusual hardship" finding, the IJ here never suggested the contrary. Rather, the IJ found that the hardship that Brian in particular would suffer as a gifted student if his parents were removed would not be "exceptional and extremely unusual."

As a result, we cannot agree with petitioners that the IJ applied an inappropriate version of the "exceptional and extremely unusual hardship" standard with respect to Brian's educational needs in her analysis. And, to the extent petitioners disagree with the IJ's factual determination that the hardship Brian would suffer as a gifted student did not qualify as "exceptional and extremely unusual," we lack jurisdiction to review their claim.

Second, petitioners say the IJ did not adequately consider the hardships Brian would face outside the classroom if

his parents were removed to Guatemala, including separation from his community in the United States, financial detriment, lack of health insurance, and the language barrier in Guatemala. They further argue that the IJ failed to weigh those hardships to Brian in the aggregate as precedent requires.

However, as the BIA rightly noted, the IJ did, in fact, consider the relevant hardship factors cumulatively. When outlining the applicable legal standards, the IJ acknowledged that "[r]elevant factors, though not exceptional and extremely unusual in and of themselves, can be considered in the aggregate when determining whether or not exceptional and extremely unusual hardship exists." (Emphasis added.) She went on to say that "while political and economic conditions in a home country are relevant, they do not justify a grant of relief unless there is an additional factor which, combined, make removal extremely and unusually hard on the qualifying relative." (Emphasis added.) When the IJ finally denied petitioners' application, she did so "based on all of the facts and circumstances."

Thus, to the extent petitioners' argument is that the IJ erred by analyzing the relevant factors causing hardship to Brian individually and not in the aggregate, the claim must fail. Furthermore, to the extent petitioners' argument is a bare attack on the relative weight the IJ accorded particular factors in her

-14-

hardship-balancing analysis, we have no jurisdiction to hear their claim.  <u>See</u> <u>Elysee</u>, 437 F.3d at 224.

### III. Conclusion

Before we conclude, we take a moment to express our regret that we can do nothing more for petitioners and their children.  The record amply confirms the IJ's finding that petitioners have established good moral character: they perform community service with their church, have won volunteer awards, and have consistently filed their tax returns and W-2s.  Moreover, petitioners' now fifteen-year-old American-citizen son, Brian, has never known life outside the United States.  Uprooting him at this stage of his development seems particularly harsh.  But the law as it now stands is not on petitioners' side, and so we are duty-bound to find as we do.

For the foregoing reasons, the petition is <u>denied in part</u> and otherwise <u>dismissed</u> for lack of jurisdiction.